State Automobile & Casualty Underwriters, appellee, v. Farm Bureau Mutual Insurance Company, appellant.

No. 51491.

(Reported in 131 N.W.2d 265)

NOVEMBER 17, 1964.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellant.

Jones, Cambridge & Carl, of Atlantic, for appellee.

STUART, J.—Two insurance companies cannot agree which one is primarily liable for the wrongful death of a third party resulting from a collision with an automobile insured by both companies. The third-party claim was compromised under an agreement that the companies could litigate the coverage question. The decision depends upon the ownership of the car, which in turn depends upon whether there was a bona fide sale. The trial court found such a sale and allowed State Auto as insurer of the vendor to recover from Farm Bureau Mutual, insurer of the vendee.

Appellant's assignment of errors involves three main propositions: (1) the sufficiency of the evidence to support the finding of a bona fide sale; (2) the weight to be given the presumption of ownership from the title certificate; (3) the admissibility of evidence of settlements made by vendor's company with other parties involved in the accident.

This case was tried to the court as a law action. The findings, therefore, are binding upon us if supported by substantial evidence.

State Auto carried the insurance on a 1957 Plymouth owned by Mary Alice Foster. Because of her impending marriage, she offered the car to her half brother, Leslie Abbott, upon the condition that he make the payments on the car. On June 23, 1959, Miss Foster wrote the mortgagee seeking to have the financing transferred from her name to that of her half brother. He took possession of the car on July 5. The Farm Bureau Mutual had been assigned his insurance out of the assigned risk pool. He advised the agent to transfer the policy from a 1950 Chevrolet to the 1957 Plymouth, which was done by letter from the agent to the company July 13, 1959. The mortgagee in a letter dated July 14, 1959, refused to transfer the financing to Mr. Abbott. The accident happened July 19, 1959. Mr. Abbott made at least two payments on the car by sending his sister his check and she in turn wrote her check to the mortgagee. At least one payment was made after the accident. The title certificate was never transferred.

I. Appellant argues that the sale was conditioned upon the transfer of the financing from Miss Foster to her brother and there is no substantial evidence from which the court could find otherwise. We hold there is evidence to support a finding that there was no such condition involved. The vendee had taken possession of the car and transferred his insurance. In a statement given one of the companies the vendor said:

"If Commercial Credit were to refuse to accept the transfer of the title and loan account it was our intention to let Leslie make the payments to me and I would make them to the finance company, and I would keep the car in my name and I would remain the legal owner. We merely discussed this lightly because we believed the Commercial Credit would accept the transfer." At least two payments were made by Leslie in this manner. This is sufficient support for the court's finding.

II. Appellant argues there is no substantial evidence to support the court's finding that there was an agreement prior to the accident waiving the consent of the mortgagee to transfer

the loan to Leslie Abbott. It is true there is no evidence of a subsequent agreement waiving such conditions, but the court could find such conditions were not part of the original agreement. We believe the foregoing evidence, particularly the quote from the vendor's statement coupled with her testimony that she only recalls one conversation with her brother concerning the car, supports the inference that they discussed this possibility at that one conversation and agreed on how the payments would be handled in the event the company refused to transfer the financing.

III. There is substantial evidence to support the court's finding that Abbott believed himself to be the owner of the car. He testified:

"On Sunday July 5, just two weeks before the accident * * * I took possession of the 1957 Plymouth. It was my sister's car and I made an agreement with her to take over the payments on it. She let me have it if I take over the payments on the car. After the discussion I rode up to Des Moines with her on Sunday. I brought her car back and called up Wallace Chesshire, and had him transfer the insurance on the '57 Plymouth, he is my insurance agent. * * *

"I told him that I got the car off of my sister and I wanted to put my insurance on the car."

Payments were made after word from Commercial Credit that the financing would not be transferred. All of this is evidence that Abbott considered himself the owner of the automobile.

IV. Appellant argues there is a presumption of ownership arising from a title certificate and that there was no positive evidence to overcome this presumption. We disagree. As stated in the foregoing divisions there is evidence to support the court's finding of a bona fide sale. Such a sale is sufficient to overcome the presumption and transfer the liability even though the title certificate is not transferred. Section 321.493 provides:

"Liability for damages. In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

"A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made."

For a full discussion of the effect of this statute see Hartman v. Norman, 253 Iowa 694, 701 to 704, 112 N.W.2d 374.

■ V. The trial court admitted into evidence a release signed by Leonard C. Haley and Vivian M. Haley which released Leslie Abbott from liability for the sum of $100. Payment was made by Farm Bureau Mutual under the policy in question. Objection was made on the ground that it was immaterial and irrelevant and had no probative value or bearing upon the ownership of the automobile involved in the collision. The trial court referred to the release in his findings and identified the signers as the driver and a passenger in the other car. It was considered as evidence that the "defendant company was obligated under the primary coverage for the accident."

There is nothing in the record to indicate who the parties receiving the $100 were, but this is unimportant because the payment was made under this policy on this accident.

It was error for the trial court to admit and consider this exhibit. It had no probative value insofar as the ownership of the car is concerned. Even if primary liability was placed upon State Auto, Farm Bureau Mutual provided excess coverage for the driver and there was still an exposure to some risk. A settlement of two possible claims for the nominal figure of $100 does not lead to the inference of primary coverage. The claims were disposed of for their nuisance value.

■ Where error appears in the admission of evidence, prejudice is presumed unless the contrary affirmatively appears. Rubin Bros. Butter & Egg Co. v. Larson, 245 Iowa 741, 63 N.W.2d 908.

VI.   Our holding there was sufficient evidence in the record to support the finding of the trial court that the original agreement for the sale of the automobile was not conditioned upon the transfer of the financing to Mr. Abbott disposes of the two remaining assigned errors in which appellant claimed there was no proof of waiver of such condition. If there was no such condition in the agreement, it would not be necessary to introduce evidence of a waiver.

VII.   For the reasons set forth in Division V we must reverse and remand the case for new trial.—Reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part, SNELL, J., who dissents, and HAYS, J., not sitting.

SNELL, J.—As shown by the majority opinion the result reached by the trial court is fully supported in several particulars.  Having such support I do not think the error discussed in Division V was sufficiently prejudicial to require reversal.