**DAIRYLAND INSURANCE COMPANY, Plaintiff,**

v.

**Howard C. HAWKINS, Administrator of the Estate of Ronald Lee Hawkins, Deceased, William Mack Archer, and Clair E. Sadler, Defendants.**

**William Mack ARCHER, Defendant and Third-Party Plaintiff,**

v.

**BURLINGTON INSURANCE SERVICE and James J. Engberg, individually and jointly, and United Security Insurance Company, Third-Party Defendants.**

Civ. No. 3–744–D.

United States District Court
S. D. Iowa,
Davenport Division.

Nov. 15, 1968.

James A. Lorentzen, Theodore T. Duffield, and Roy M. Irish, Des Moines, Iowa, for plaintiff.

Dale Ferguson, Rock Island, Ill., for defendant, Howard C. Hawkins.

George A. Goebel and Margaret Stevenson, Davenport, Iowa, for defendant Archer and Sadler.

John E. McCracken, Davenport, Iowa, for defendant Burlington Ins. Service and James J. Engberg.

Seymore M. Raben, Davenport, Iowa, for third-party defendant United Security Ins. Co.

Frank G. Schubert and Gerry M. Rinden, Rock Island, Ill., and Jack Schroe-

der, Bettendorf, Iowa, for defendant John J. Cox.

## MEMORANDUM

STEPHENSON, Chief Judge.

■ Plaintiff, Dairyland Insurance Company (Dairyland), a Wisconsin Corporation, with its principal place of business in Wisconsin, brought this action against defendant Howard C. Hawkins, Administrator of the Estate of Ronald Lee Hawkins, deceased (Hawkins), a citizen of Illinois,[1] and the defendants, William Mack Archer (Archer) and Clair E. Sadler (Sadler), citizens of Iowa, seeking a declaratory judgment under Title 28 U.S.C. § 2201, declaring that plaintiff owed no duty of performing a liability insurance contract issued by plaintiff to Sadler. Complete diversity existed between the parties. Gaw v. Higham, 267 F.2d 355 (6th Cir. 1959). Thereafter Hawkins and Archer counterclaimed against plaintiff. In addition Archer filed third party complaints against third party defendants Burlington Insurance Service, an Iowa Corporation (Burlington) and James J. Engberg, a citizen of Iowa (Engberg) seeking to join said third party defendants as co-defendants to his counterclaim against plaintiff (Fed.R.Civ.P. 13(h), 20). This Court in an interim ruling held that Archer's counterclaim was compulsory and therefore Burlington and Engberg were properly joined as third party defendants despite their lack of diversity with Archer. United Artists Corp. v. Masterpiece Productions, 221 F.2d 213 (2d Cir. 1955); United States for Use and Benefit of Central Rigging and Contracting Corp. v. Paul Tishman Co., 32 F.R.D. 223 (E. D.N.Y.1963); Markus v. Dillinger, 191 F.Supp. 732 (E.D.Pa., 1961); 3 Moore, Federal Practice, ¶ 13.30 at p. 103 (1967). Archer also filed third party complaint against United Security Insurance Company (United), a New Jersey Corporation. The claims of the various parties will be discussed in more detail in connection with findings of the Court.

Archer had an accident on April 29, 1966, while driving a 1963 Chevrolet automobile, the title of which auto was registered in Sadler. An insurance policy was in existence issued by plaintiff Dairyland, naming Sadler as owner of the auto and Archer and wife as operators. A policy was also in existence issued by United naming Sadler as insured. Both Dairyland and United claim Sadler had sold the auto in question to Archer prior to the date of the accident and therefore Sadler had no insurable interest on the date of the accident. Each company denied coverage and refused to defend a suit commenced against Archer in the United States District Court for the Southern District of Illinois by Hawkins arising out of the accident which resulted in a $30,000 judgment being awarded in favor of Hawkins and against Archer. Archer in his counterclaim again Dairyland and United asks that he be indemnified for all sums that he is obligated to pay as a result of the $30,000 judgment and for damages including punitive damages arising out of the failure of said companies to defend said action and pay the resulting judgment. Hawkins in his counterclaim against Dairyland asks that said company be required to pay the $30,000 judgment he acquired against Archer. Archer in his third party complaint against Burlington and Engberg seeks damages including payment of the $30,000 judgment upon the theory that said defendants failed to obtain proper insurance for Archer in breach of their implied warranty to do so.

In July 1965, at the time of his daughter's marriage to Archer, Sadler gave them the auto in question for use on their honeymoon and for an indefinite period thereafter. Archer's drivers

---

1. John J. Cox was also named a party defendant, but this controversy was settled prior to trial herein.

license was under suspension at the time and it was agreed that his wife would do the driving. Sadler so informed a representative of his liability carrier, United. Sometime in the late fall or early winter of 1965, Sadler indicated to Archer he could have the car permanently upon payment of $500 which could be paid at the rate of $25 a month. In the meantime title remained in Sadler, although the exclusive use of the auto was given to Archer and his wife.

On November 2, 1965, Archer visited Burlington and talked to Engberg aobut his need for liability insurance and a financial responsibility filing with the State of Iowa in order that he could obtain his drivers license. Archer advised Engberg that the auto was owned by his father-in-law, Sadler, and titled to Sadler; that the auto was being used exclusively by Archer and his wife and that at some future date title to the auto would be transferred to Archer. Engberg then caused an application for insurance to be filled out on a Dairyland form which was signed by Archer. Sadler was listed as owner. Operators were listed as Archer and his wife, Nancy Lou Archer (Exhibit J–5).[2] Thereafter Engberg forwarded the application to Dairyland, together with a memo (Exhibit J–4) from Engberg to Dairyland which reads as follows:

"This car is registered to Clair Eugene Sadler of Eldon, Iowa. The car is garaged in Burlington, Iowa and will be driven by William Mac Archer and Nancy Lou Archer. Mr. Sadler is Mr. Archer's father in law. Mr. Sadler will not be driving the car. At a later date the title will be transferred to Mr. Archer. Mr. Archer needs a filing but does not know his case number. According to the rate sheet the charge for 3 months should be $25.00 which we are attaching a check for.

Please proceed immediately and advise as soon as possible when the filing is made.

Thank you.

Jim Engberg"

Thereafter, Dairyland issued a liability insurance policy wherein Sadler was listed as insured and it was indicated thereon that an appropriate filing (Code of Iowa 1966, § 321A.19) had been made with the State of Iowa indicating liability coverage for Archer.[3] On April 29, 1966 Archer's accident occurred and both Dairyland and United were advised thereof. Both companies conducted an investigation of the accident including the taking of various statements from Archer, Sadler and Engberg. Each of the companies denied coverage on the grounds that Sadler who was listed as owner and insured had no insurable interest because the auto had been sold to Archer by Sadler. Also, that Archer could not be an insured under the omnibus clause of the insurance contract because Sadler as non-owner could not give consent to Archer to drive as provided for in said clause. United notified Archer and Sadler of its denial of liability coverage by letter dated June 8, 1966 and tendered to Sadler a return of premium in the amount of $33.30 by check dated June 21, 1966. Sadler was paid $980.00 under the collision portion of his policy upon the theory that he had a security interest in the auto.

Dairyland notified Sadler and Archer of its denial of liability coverage by letter dated June 10, 1966. Said letters further advised that Dairyland refused to defend Archer in the suit filed against him for $30,000 in the Southern District of Illinois by Hawkins. Return of premium and interest in the amount of $25.75 was also tendered to Sadler. On June 29, 1966, default judgment was

2. Exhibit J is the deposition of Engberg to which is attached what is labeled as defendant's Exhibit 5.

3. Actually successive policies were issued by Dairyland. The one in November

expired in early February 1966 but was renewed on February 11, 1966. The required filing with the State of Iowa in behalf of Archer was made by Dairyland.

rendered in Illinois against Archer in the sum of $30,000. Thereafter counsel for Hawkins corresponded with Dairyland and its counsel with respect to said judgment. Dairyland denied liability. Ultimately suit was commenced on the Illinois judgment in the District Court of Iowa in and for Wapello County and judgment obtained. By letter dated June 1, 1967 and addressed to United and Dairyland, counsel for Hawkins offered to accept the policy limit of $10,000 before taking further action to collect the judgment. Dairyland's action for declaratory judgment herein was filed June 8, 1967.

■ Dairyland and United join in urging there was a bona fide sale under the Iowa sales law from Sadler to his son-in-law Archer and therefore Sadler had no insurable interest and the insurance contracts were therefore void. State Automobile & Casualty Underwriters v. Farm Bureau, 257 Iowa 56, 131 N.W.2d 265 (1964); Hartman v. Norman, 253 Iowa 694, 112 N.W.2d 374 (1962); Hansen v. Kuhn, 226 Iowa 794, 285 N.W. 249 (1939). The difficulty with this contention is that the evidence does not disclose a bona fide sale. There was no agreement by Archer to purchase. At the most there was an informal arrangement between the father-in-law, Sadler, and his son-in-law, Archer, that Archer and his wife were to have the use of the auto in question, and that at a future time ownership of the auto would be transferred to Archer provided a certain amount was paid to Sadler. There was no obligation by Archer to purchase or to make definite payments. At no time prior to the accident was there any transfer of ownership from Sadler. Sadler intended to make a partial gift of the auto at some future time provided Archer paid about one-half the value of the car ($500). Sadler did not want to make it too easy for Archer to acquire the auto. The Court finds that at the time of the accident Sadler was the owner of the auto in

question and it was being used by Archer with his consent.[4]

■ Since Sadler was the owner of the automobile at the time of the accident and Archer was driving it with Sadler's consent United and Dairyland had a duty to defend Archer in the Illinois litigation. Having breached that duty, both companies are liable for the damages resulting to Archer. Ripepi v. American Ins. Co., 349 F.2d 300, 302 (3d Cir. 1965); Priester v. Vigilant Ins. Co., 268 F.Supp. 156 (S.D.Iowa 1967); 50 A.L.R.2d 461; 7 Am.Jur.2d Automobile Insurance §§ 164–167. Doubt as to the obligation to defend must be resolved in favor of the insured. Government Employees Ins. Co. v. Swanson, 246 F.Supp. 698 (D.Minn.1965). Both policies (Dairyland Exhibit V; United Exhibit H) contain standard provisions requiring the respective companies to defend any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy even if any of the allegations of the suit are groundless, false or fraudulent, and to pay on behalf of the insured all sums, within the policy limits, which the insured shall become legally obligated to pay arising out of the ownership, maintenance or use of the automobile in question.

■ In view of the foregoing finding, Archer's claim of estoppel against Dairyland need not be decided. However, it is also the finding of the Court that Dairyland is estopped from denying liability under the contract of insurance it issued naming Sadler as owner and Archer and his wife as operators. A full disclosure was made by Archer to Engberg that he, Archer, and his wife had exclusive use of the auto in question but title was to remain in Sadler; that Archer needed insurance so he could regain his drivers license. These facts were made known by Engberg to Dairyland in the memorandum (Exhibit J–4) accompanying the insurance application. Dairyland made an appropriate filing

4. Cf. Milbank Mut. Ins. Co. v. Wentz, 352 F.2d 592, 596–597, (8th Cir. 1965).

with the State of Iowa indicating Archer was insured. Dairyland is now estopped from denying liability under its policy. Imperial Cas. & Indem. Co., a Corp. v. Carolina Cas. Ins. Co., 402 F.2d 41, 8th Cir., October 30, 1968; Hully v. Aluminum Company of America, 143 F. Supp. 508, (S.D.Iowa 1956).

Aside from the issue of coverage which has heretofore been determined, the remaining substantial issue involves a determination of whether the obligation of the respective companies to pay in behalf of the insured, Archer, is limited to the policy limits of $10,000. Dairyland and United join in urging that if coverage is found to exist, in no event can their liability exceed $10,000 and if both are held responsible, their respective liabilities cannot exceed $5,-000 each. Archer contends that both companies are responsible for the full amount of the judgment obtained against him ($30,000 plus interest and costs) plus damages he has suffered as a result of their failure to defend.

It has been held that the obligation to pay damages in behalf of the insured is limited by the maximum liability stated in the policy even though the insurer refused to defend. Mannheimer Brothers v. Kansas Cas. & Surety Co., 149 Minn. 482, 184 N.W. 189 (1921); 49 A. L.R.2d 694, 720. It has also been held that where insurer denied coverage and wrongfully refused to defend insured and in the course of litigation refused reasonable settlement within the policy limits, the insurer was liable for the entire judgment rendered against the insured even though the judgment exceeded policy limits. Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883 (1958). In another case where insurer unjustly denied coverage and refused to defend insured, it was held that the mere fact that the offer to settle within policy limits was not communicated to insurer, did not relieve insurer of its obligation to pay judgment entered against insurer in excess of the policy limits. American Fidelity Fire Ins. Co. v. Johnson, 177 So.2d 679 (Fla.App.1965). See also, Seward v. State Farm Mutual Automobile Ins. Co., 261 F.Supp. 805 (S.D.Fla. 1966).

 No Iowa cases directly in point have been cited to the Court and none have been found. However, it is well established that Iowa has adopted the bad faith test in excess judgment cases. The burden is placed on the person claiming a judgment in excess of the policy limits to establish that the insurer was guilty of bad faith in refusing to settle for a figure within the policy limits. Kohlstedt v. Farm Bureau Mut. Ins. Co., 258 Iowa 337, 139 N.W.2d 184 (1965); Ferris v. Employers Mut. Cas. Co., 255 Iowa 511, 122 N.W.2d 263 (1963); Henke v. Iowa Home Mut. Cas. Co., 250 Iowa 1123, 97 N.W.2d 168 (1959). It is the view of this Court that the Iowa Supreme Court will likewise apply the bad faith test to excess judgment cases where the insurer wrongfully refused to defend because of a denial of coverage and refused to settle within the policy limits during the course of litigation. The findings of this Court as to the conduct of Dairyland and United in this regard will be separately discussed.

## DAIRYLAND

It has already been pointed out herein that Archer made a full disclosure concerning the ownership and use of the automobile in question when he applied for liability insurance from Dairyland's agent, Engberg, and this information was transmitted to Dairyland by Engberg (Exhibit J–4). Dairyland knew the purpose was to insure Archer and his wife as operators and the face of the policy it issued (Exhibit V) indicates that an appropriate filing was made for "William" (William Mack Archer) with the State of Iowa in order that Archer could obtain his drivers license. Such a filing was in fact made under date of 2–17–66 showing that a liability policy was issued by Dairyland to Sadler and "filed on behalf of William Mack Archer." (Exhibit K). There can be no

question but what Dairyland intended to afford coverage to Archer as an operator of the automobile. Their sole basis for denying coverage and refusing to defend was that "the named insured, Sadler, on April 29, 1966, had no insurable interest in the vehicle in question, and therefore, the insurance policy was void and of no force and effect." Dairyland persisted in denying liability for the same reason and refusal to settle for their policy limits of $10,000 even after judgment was taken for $30,000 against Archer in Illinois and judgment taken on said Illinois judgment in Iowa preliminary to action for collection of the same.

Dairyland urges that it was not guilty of bad faith in denying coverage, in refusing to defend Archer, and in refusing to pay $10,000 before action was taken to collect the $30,000 judgment obtained against Archer. Dairyland's claimed lack of bad faith is predicated on some statements its agents took from Archer (Pltfs. Exhibits 1, 8) and from Sadler (Pltfs. Exhibit 5) after the accident which it claims shows there was a transfer of ownership from Sadler to Archer. These statements at the most show an informal arrangement between Sadler and Archer whereby Archer was to be given an opportunity to purchase the automobile. Dairyland also corresponded with United who informed them that their investigation indicated a transfer of ownership from Sadler to Archer. The statements and investigation made by Dairyland regarding ownership after the accident when considered along with information in their own files regarding the policy issued, plus the information conveyed to their agent Engberg by Archer at the time the policy was applied for do not furnish a reasonable basis for believing there was a bona fide sale of the auto in question. Upon full review of the record, the Court finds that Dairyland was guilty of bad faith in denying coverage. It was also guilty of bad faith in refusing to settle the $30,000 judgment for $10,000. The statement taken by Dairy-

land May 7, 1960 (Exhibit 1) alone indicates a strong case of liability against Archer. The $30,000 judgment on account of the death of Ronald Hawkins was to be reasonably anticipated. Neither Dairyland nor United have contended that the $30,000 judgment entered against Archer was not to be expected or that if defended the result would be otherwise. The mere hope that United might have to share in an ultimate recovery by Archer is not enough to relieve Dairyland of its responsibility to its insured. The advice of counsel that based on the statements taken from Archer and Sadler there had been a transfer of ownership from Sadler to Archer does not relieve Dairyland of its responsibility to make a reasonable investigation of its own file and that of its agent Engberg before denying coverage. Since Dairyland was guilty of bad faith in denying coverage and in refusing to settle within the policy limits, judgment will be entered in favor of Archer and against Dairyland for $30,000, plus interest from the date of the Illinois judgment against Archer. Since Archer did not employ counsel to defend the Illinois action, attorney fees, therefore, are not claimed nor allowable. However, in view of this Court's finding that Dairyland was guilty of bad faith in refusing to defend and in refusing to pay the judgment entered against Archer, Archer is entitled to judgment against Dairyland for reasonable attorney fees and expenses incurred in defending this declaratory judgment action brought by Dairyland and in prosecuting his counterclaim against Dairyland herein. See, Appleman on Insurance, Vol. 7A, page 513–13, § 4691. Archer's claim for punitive damages against Dairyland is denied. See Kirtley v. Bankers Life & Casualty Co., 198 F.Supp. 30 (S.D.Iowa 1961); affirmed on condition that exemplary damages be remitted, 307 F.2d 418.

## UNITED

It has been previously held herein that United breached its duty to defend

Archer in the Illinois litigation and therefore is liable for the damages resulting to Archer. Since United was a primary insurer along with Dairyland, United must bear a pro rata share of the judgment obtained against Archer within its policy limits of $10,000, or in the sum of $5,000, plus interest and costs. Attorney fees and costs incurred by Archer in prosecuting his counterclaim against United will also be allowed. The issue of whether United should be required to share in the excess judgment against Archer requires further discussion.

■■■ After a full review of the record the Court finds that United was not guilty of bad faith in refusing to defend and in refusing to settle the claim against Archer within its policy limits. In the summer of 1965 Sadler notified a representative of United that his daughter would be using the automobile on her honeymoon. However, it was specified that Archer was not to drive since his drivers license was under suspension. United received no further word concerning Archer's use of the automobile until after the accident when an investigation was made and statements taken from Archer and Sadler (Exhibit U–1, U–2, U–3). United had no right to assume that conditions would remain the same with respect to Archer's nonuse of the automobile and therefore the mere fact that Sadler turned over exclusive use of the automobile to Archer and his wife without notifying United is not such conduct as would bar United's liability. Milbank Mut. Ins. Co. v. Wentz, supra, 352 F.2d at p. 596. United's failure to defend was wrongful. However, its failure to defend and to pay within the policy limits cannot be said to be in bad faith. The statements taken from Archer and Sadler which included Archer's statement that he had procured a liability policy from Dairyland at least gave United some cause for believing it was not obligated to defend Archer. After notifying Sadler and Archer of its

denial of liability coverage in June 1966, United heard nothing further concerning any claim of liability against it until United received approximately a year later a letter from counsel for Hawkins that Hawkins would accept the policy limits on its claim against Archer if paid within ten days. No request was ever made by Sadler or Archer that United defend the action or pay the policy limits. Once insurer has denied coverage, insured is under no obligation to keep insurer advised of developments, including notice of suit. See Annot., 49 A.L.R.2d 694, §§ 27–34 and cases cited therein pp. 755–56. However, the conduct of insured is a factor to be considered in weighing the question of bad faith on the part of the insurer.

## BURLINGTON AND ENGBERG

In view of the Court's finding that Engberg transmitted to Dairyland the request for insurance made by Archer with a proper disclosure of the facts, and that Dairyland is liable, as previously set out, Archer's claim against Engberg and Burlington will be dismissed, each party to bear their own costs.

## HAWKINS

The judgment to be entered in favor of Archer against Dairyland and United for damages arising out of the judgment obtained by Hawkins against Archer will make appropriate provision for disbursement of the funds to Hawkins in satisfaction of Hawkins judgment against Archer.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Counsel for Archer and Hawkins will prepare and submit to counsel for all parties for approval a form of judgment in accordance herewith. The matter of attorney fees and costs will be submitted to the Court by affidavit filed herein. All parties concerned will be given ten days to oppose any such requests. If a dispute arises as to the amount of attorney fees and costs a hearing thereon will later be set.