**Ethel Cook BELLEW, Appellee,**

v.

**IOWA STATE HIGHWAY COMMISSION, Appellant.**

**No. 53353.**

Supreme Court of Iowa.

Oct. 14, 1969.

Richard C. Turner, Atty.Gen., Henry L. Holst, Special Asst.Atty.Gen., James E. Graham, Asst.Atty.Gen., both Counsel for Iowa State Highway Commission, Ames, and James B. Smith, of Shirley, Smith & Shirley, Perry, for appellant.

Allan A. Herrick, of Herrick, Langdon, Belin & Harris, Des Moines, for appellee.

MASON, Justice.

Iowa State Highway Commission appeals from the trial court's award of $71,000 as damages resulting from condemnation of a 40-acre strip of ground taken diagonally through plaintiff's farm for highway purposes. Ethel Cook Bellew, land owner, appealed to the district court from condemnation commission award of $38,391 asking damages of $147,557. This appeal was tried to the court without a jury.

Section 472.21, Code, 1962, requires condemnation appeals to the district court be docketed showing condemnee as plaintiff and condemnor as defendant.

Plaintiff's farm, located two miles west of West Des Moines, was prior to the taking, on the main east-west blacktop leading into West Des Moines, known as Ashworth Road. It consisted of approximately 149.5 tillable acres in the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section 3. and the Northeast Quarter (NE¼) of the Northwest Quarter (NW¼) and the North Half (N½) of the Northeast Quarter (NE¼) of Section 10, all in Township 78 North, Range 26 West of the Fifth P.M., Dallas County, acquired by plaintiff in 1956. There is a small church site out of the southwest quarter of the land in section 3. The land had always been farmed as a unit. There was no contrary suggestion.

Before the taking the farm was severed along the section line between sections 3 and 10 by Ashworth Road. The 40 acres in the northeast quarter of the northwest quarter was separated from the 80 acres in the north half of section 10 by a north-south county gravel road. Plaintiff's land south of the highway had 2640 feet of frontage on Ashworth Road. The land north of the highway had a frontage of approximately 1320 feet.

Defendant by condemnation took only 1.9 acres of the land north of the road but in so doing, destroyed the 1320 feet of frontage on Ashworth Road. It took 34.7 acres of land on the south side, destroying an additional 2640 feet of highway frontage. The condemnation took 3.4 acres from the southwest 40. The gravel road which went along the east side of this tract now dead ends at the point where the in-

terstate enters this tract. As a result of the condemnation the part of Ashworth Road through plaintiff's property along the 80 acres on the south and the 40 acres on the north has been destroyed. For all practical purposes it now ends at the east line of plaintiff's property.

Plaintiff asserted as items of damage suffered by reason of the condemnation: (a) Taking 40 acres of plaintiff's real estate, almost three fourths of a mile of which fronts on the paved highway through the property, (b) Destroying the paved highway on the property leading directly into West Des Moines on Ashworth Road, (c) Requiring the building of 332 rods of new fence and the removal of 14 rods of said fence, (d) Taking and interfering with plaintiff's right of free and reasonable access to different parts of plaintiff's property and the highways thereon, (e) Destroying the desirability of plaintiff's land for subdivision purposes and cutting off frontage on the paved highway, (f) Damage from inconvenience and expense to plaintiff in the operation of her farm by rendering different portions thereof inaccessible and leaving the remaining fields irregular and difficult to farm, and (g) Consequential damages to plaintiff's remaining property, to the improvements thereon and use thereof.

The parties agree that in the trial court "the issues were the highest and best use of the farm before the taking on October 13, 1965, and the damages based upon the difference between the before and after values of the farm, as a whole, which were decided by the Court sitting as trier of law and fact".

Plaintiff's witnesses determined and testified the highest and best use of plaintiff's land was for suburban residential development. Defendant's witnesses determined and testified the highest and best use of plaintiff's land was as farm land.

The court, as trier of fact, decided the highest and best use was for suburban residential development.

I. Defendant's four assignments of error relied on for reversal are based on the court's adverse rulings on admissibility of evidence.

Over defendant's objection plaintiff introduced considerable evidence to show properties along Ashworth Road immediately east of plaintiff's property were being subdivided and building lots sold for substantial values. Her three expert witnesses cited approximately 20 sales, the greater number consisted of two or less acres of from 110 feet to perhaps 400 feet frontage on Ashworth Road. The majority of such frontages were 300 feet or substantially less. Fourteen of the sales were one acre or less. Others involved five- and ten-acre sales, a 36-acre sale and a 112-acre sale. These witnesses stated the sale prices of the various tracts under consideration.

Defendant's motion to strike testimony of plaintiff's witnesses Brandt, Richards and Kesterson on the grounds that properties relied on by them as comparable to plaintiff's property were not comparable was overruled.

Defendant contends the court erred in admitting evidence of "other sales" as direct evidence of the value of plaintiff's farm with no foundation laid as to time of sale, size of properties, mode of sale, or nature of the property sold, when in fact the sales were not comparable as a matter of law. The commission contends none of the sales of tracts referred to by plaintiff's expert witnesses are sufficiently comparable to be admissible for any purpose here. Although agreeing the admission of evidence to illustrate the adaptability of raw farm land for acreage or subdivision development is not error, it maintains the price at which these lots might be sold, if such development did occur, is not admissible as substantive evidence as it is based on speculation and conjecture and represents what price might be paid sometime in the future. It therefore does not represent the actual cash market value of the property.

It is true " 'since Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, 85 A.L.R.2d 96, evidence of sales of comparable property has been admissible as substantive evidence of the fair market value of the subject property. However, it must be shown that there is sufficient similarity to the subject property before such evidence is admissible. [Citations.]' Martinson v. Iowa State Highway Commission, 257 Iowa 687, 694–695, 134 N.W.2d 340, 344; Belle v. Iowa State Highway Commission, 256 Iowa 43, 48, 126 N.W.2d 311, 314.

" 'Other similar sales need not be identical but must have a resemblance in order to be shown in evidence. Size, use, location and character of the land and time, mode and nature of the sale all have a bearing on the admissibility of such evidence. Much must be left to the sound discretion of the trial court in determining whether the other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible. [Citations]' Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 986, 108 N.W.2d 487, 492." Crozier v. Iowa-Illinois Gas & Electric Co., Iowa, 165 N.W.2d 833, 834–835.

In answer to the commission's assertion of error plaintiff does not claim the sales were sufficiently comparable nor does she take issue with the above rule. She asserts evidence of other sales in small tracts for residential purposes of other land fronting on Ashworth Road adjoining or in close proximity to plaintiff's Ashworth Road frontage was admissible to show adaptability of plaintiff's land for residential purposes and as showing the familiarity and knowledge of plaintiff's expert witnesses of sales and of land values in the vicinity of her land.

Plaintiff contends the trial court made it clear it had considered the evidence of other sales only for the limited purpose of showing the property abutting Ashworth Road was being subdivided rather than as direct proof of the value of particular lots, and to show the highest and best use of plaintiff's land was for residential purposes as was land east of it, not for agricultural purposes. In support she quotes this from the trial court's findings of fact, "There was considerable testimony introduced as to other sales of real estate, especially for building lots, along Ashworth Road in the immediate area of plaintiff's land. * * * The court feels they have some value to show the highest and best use of real estate and to show that the property abutting Ashworth Road was being subdivided, rather than any direct proof of actual value of particular lots. In other words, it does show regardless of the subdivided lots, that the highest and best use of plaintiff's land was for what plaintiff claimed for it and plaintiff's experts claimed for it, not strictly agricultural."

In Mohr v. Iowa State Highway Commission, 255 Iowa 711, 720–721, 124 N.W. 2d 141, 147, we said:

"In general, considerable latitude is allowed in the admission of evidence of the capabilities of land affected by a condemnation and the uses to which it may reasonably be adapted. It is true there must be a present demand for the land for such uses or reasonable expectation of such demand in the near future. It must be remembered too that such evidence is to be considered only for the effect it has on market value at the time of the taking, not at some future time.

"This from Ranck v. City of Cedar Rapids, 134 Iowa 563, 565–566, 111 N.W. 1027, 1028, states the rule we have applied: ' * * * the owner is entitled to have the * * * [trier of fact] informed of all the capabilities of the property, as to the business or use, if any, to which it has been devoted, and of any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property for

any legitimate purpose or business, even though it has never been so used, and the owner has no present intention to devote it to such use' * * * [Citing authorities]." See also Johnson County Broad. Corp. v. Iowa State Highway Comm., 256 Iowa 1251, 1253–1254, 130 N.W.2d 707, 708–709, and citations; Linge v. Iowa State Highway Comm., 260 Iowa 1226, 1240, 150 N.W.2d 642, 650.

■ As stated, one issue in the trial was the highest and best use of the farm before the taking. Although testimony of sale prices of tracts not sufficiently similar to the condemned land was inadmissible as substantive evidence of the fair market value of plaintiff's land, testimony of other sales insofar as it tended to disclose the real character and condition of the property, the capabilities of plaintiff's land affected by the condemnation and the use to which it may reasonably be adapted was admissible as bearing on the issue of highest and best use.

■ Knowledge and familiarity of plaintiff's expert witnesses as to a present demand of land for residential purposes in this area or reasonable expectation of such demand in the near future would be relevant as tending to establish their competency to express opinions on highest and best use. The trial court considered the evidence for this limited purpose "rather than any direct proof of actual value of particular lots". In support see authorites cited, supra.

" * * * [W]hen an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity. This doctrine, though involving certain risks, is indispensable as a practical rule." See 1 Wigmore on Evidence, Third Ed., section 13 and the authorities cited in the text.

The problem here is not that considered in Lemke v. Mueller, Iowa, 166 N.W.2d 860, 870–871.

■ II. The other issue involved the amount of damages. " * * * The basis for the award of damages in these cases is the difference between the reasonable market value of the entire tract immediately before the condemnation, and of the remaining portion after the taking." Hall v. West Des Moines, 245 Iowa 458, 464, 62 N.W.2d 734, 737, and citations.

The rule is expressed in this language in Jones v. Iowa State Highway Comm., 259 Iowa 616, 621–622, 144 N.W.2d 277, 280:

"The measure of damages for a partial taking is the difference in the fair market value of the subject property immediately before and immediately after condemnation. The fair market value of land is the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept. A condemnee is damaged to the extent his property is diminished in value by the condemnation. * * * [Citing authority]."

The opinions of valuation witnesses for both parties did not vary greatly as to after-taking value but varied widely as to the before value. Disregarding plaintiff's own testimony, the average value after taking as shown by plaintiff's witnesses was $73,101 while the average value after taking of defendant's experts was $60,366 showing a variance of only $12,735 between the experts on the value of the land after the taking.

However, the variance between the experts as to value before taking is very substantial. The average value before taking shown by plaintiff's witnesses, including plaintiff herself, is $185,115, the average value of plaintiff's experts without including plaintiff's testimony was $175,129. The average of defendant's experts as to the value before taking was $100,450. Averaging the actual damage of

plaintiff's witnesses including plaintiff, we get the amount of $113,262, and the average damages by plaintiff's experts not including plaintiff's testimony is $101,831. The average damage of defendant's expert witnesses is $40,083.

The trial court found: "It is quite evident this wide variance is caused by the different experts' approach to the matter; that is, what they consider the highest and best use of plaintiff's real estate before the taking. * * *."

The court concluded that plaintiff's property had a fair market value of $143,000 before taking and a value of $72,000 after taking, resulting in the damages awarded.

As to the value issue defendant further contends under its first assigned error that admission over timely objection of testimony of plaintiff's experts as to the sale prices of various tracts not comparable as a matter of law deprived the commission of a fair and impartial trial. In support of this contention the commission maintains their testimony, based on speculation and conjecture as to what might or could be done with plaintiff's land in the future, did not represent the cash market value of the property; the systematic admission of their testimony as to the sale prices of these various tracts so detracted from and depreciated the weight of properly admitted evidence of other reasonably comparable sales that the trier of the fact—the court here—was led into unnecessary confusion.

Defendant relies on this statement in the second Redfield case (Redfield v. Iowa State Hgwy. Commission, 252 Iowa 1256, 1262–1263, 110 N.W.2d 397, 401):

" * * * [A] speculative value * * * is not a fair test of market value, which is the true test in condemnation proceedings. * * * [Citing authorities]. And this means a sale for cash."

Plaintiff replies to this argument by again contending the court did not consider the prices of these sales as substantive evidence of the value of the property being condemned but sales as showing that properties along Ashworth Road were being subdivided and building lots sold off for substantial value and as showing the highest and best use of plaintiff's property was for suburban residential rather than agricultural purposes; the evidence was competent for this purpose.

Both sides cite Martinson v. Iowa State Highway Comm., supra, 257 Iowa 687, 134 N.W.2d 340, and Iowa Development Co. v. Iowa State Hgwy. Comm., 252 Iowa 978, 108 N.W.2d 487, among others as support for their opposing positions. Both cases are distinguishable.

In Martinson v. Iowa State Highway Comm., supra, 257 Iowa at 695, 134 N.W. 2d at 344–345, the expert witness did not give the sale price or refer to the sales as comparable in any manner but only used them to show soil conditions, lay of the land and generally exhibit his familiarity with real estate sales in the vicinity. This court held the rule announced in Redfield v. Iowa State Hgwy. Commission, supra, had no application. It was unnecessary for the offering party to show sufficient similarity between the referred to sale and the one in question.

In Iowa Development Co. v. Iowa State Hgwy. Comm., supra, 252 Iowa at 987–988, 108 N.W.2d at 492–493, involving trial without a jury plaintiff's expert testified on direct examination, over defendant's objection, to the price paid for many other tracts in and near Des Moines. Defendant appealed contending the tracts were not shown to be sufficiently similar to the development tract and were erroneously admitted into evidence in violation of the rule as first announced in Redfield v. Iowa State Hgwy. Commission, supra. Plaintiff responded that the trial court did not consider evidence of the sale price of the property, citing as authority the court's findings of fact. This court examined the findings of fact and found plaintiff's contention erroneous. The findings of fact revealed the trial

judge did take into consideration for purposes of evaluation the comparable sales offered by plaintiff as testified to on cross-examination, a fact sufficient to make Redfield v. Iowa State Hgwy. Commission, supra, applicable.

Unlike Martinson, here the expert testified to the sale price of each "comparable". In Iowa Development Company, supra, this court determined it was clear the trial court had improperly considered evidence of sales of insufficient similarity with the condemned land. Here the trial court stated specifically the purpose for which he considered the evidence.

Both parties concede the evidence was inadmissible as substantive evidence of the value of the condemned land. Their opposing contentions present the question whether defendant was properly protected under the circumstances here from any prejudicial effect that might result from the misuse of this evidence by the trier of the fact in considering it as proof of matters other than that for which it was admitted—highest and best use. See Adkins v. Brett, 184 Cal. 252, 193 P. 251, 253–254, set out in length in the text of 3 Wigmore on Evidence, Third Ed., section 13.

■ Evidence improperly admitted over timely and proper objection in a law action tried to the court constitutes a ground for reversal exactly as if the case had been tried to a jury. On appeal it will be presumed the trial court considered all the evidence admitted in arriving at its judgment.

■ Where, then, improper evidence is admitted in the trial of an action at law, though the trial be to the court, prejudice is presumed and judgment will be reversed unless the record shows affirmatively that it was afterwards discarded. Jaffray & Co. v. Thompson, 65 Iowa 323, 325–326, 21 N.W. 659, 661; Iowa Elec. Co. v. Scott, 206 Iowa 1217, 1224, 220 N.W. 333, 337; In re Estate of Conner, 240 Iowa 479,

492, 36 N.W.2d 833, 841; Olson v. Olson, 242 Iowa 192, 205–206, 46 N.W.2d 1, 9, 40 A.L.R.2d 1; Rubin Bros. Butter & Egg Co. v. Larson, 245 Iowa 741, 746, 63 N.W.2d 908, 911; Haase v. Hub-Co Credit Union, 253 Iowa 1202, 1205, 115 N.W.2d 880, 882; In re Claim of Blackman (In re Hunt's Estate), 256 Iowa 1076, 1081, 129 N.W.2d 618, 621; State Etc. Underwriters v. Farm Bureau Etc., 257 Iowa 56, 60, 131 N.W.2d 265, 267.

■ An examination of the record supports plaintiff's assertion. The statements of the trial court quoted in Division I, supra, from its findings of fact leave little doubt the trial court did in fact discard those portions of the evidence involving sale prices of other tracts as substantive evidence of value of the condemned property.

In considering the proper means for avoiding the risk of misusing the evidence in actions tried to a jury "it is uniformly conceded that the instruction [to the jury] of the court [that the evidence is competent only as proof of one point and must not be considered as proof of others] suffices for that purpose; * * *." Adkins v. Brett, supra, 184 Cal. at 255, 193 P. at 253–254, quoting from 3 Wigmore on Evidence, Third Ed., section 13.

As to the necessity on the part of the party who thinks a limiting instruction should be given to bring the matter properly to the court's attention, see Kiger v. Meehan, 253 Iowa 746, 753, 113 N.W.2d 743, 748.

It would be a strange rule which would hold a jury competent to make this distinction when guided by a limiting instruction and on the other hand to hold a trial judge even though he has indicated in his findings the limited purpose for which he considered the evidence was not competent to make the distinction where the evidence involved multiple admissibility.

Under the circumstances here defendant was not prejudiced.

III. Defendant's second assignment of error presents another problem. It contends the court erred in permitting plaintiff and her experts, on direct examination over timely objection, to individually value separate parcels of plaintiff's farm in arriving at their before and after value opinions and in refusing to strike all value opinions based upon such method.

Richardson was asked on direct examination if in arriving at his opinion he had made any division of the land and put different values on different portions of it. He answered he had considered the front half of all the frontage as one value and the rear or deferred development ground at another value; had included the 75 acres of frontage on the four 40's at $1500 an acre, the building lot and orchard areas of approximately five acres at $12,000 and the 69.5 acres of deferred development at $800 an acre. Defendant's timely objection to this line of testimony was overruled as was its motion to strike the testimony for the reasons urged in the objection.

Kesterson was asked on direct examination how he arrived at his values. He answered he had subdivided with desirable lots facing Ashworth Road; had placed a valuation of $40,000 on the 40-acre tract with buildings, divided the north 40 into five-acre pieces valued at $5000 each and came up with a valuation of $40,000 on that tract. Kesterson placed a valuation of $500 an acre on other portions of the remaining land. The commission's objections to his testimony were again overruled.

On cross-examination Kesterson testified that he based his entire appraisal on the fact that the 160 acres was owned by plaintiff and used and farmed as one single unit.

In Hoeft v. State, 221 Iowa 694, 697–698, 266 N.W. 571, 573, 104 A.L.R. 1008, we said:

"It is * * * the settled rule of law in this state that, where an entire tract of land consisting of several subdivisions is used in its entirety as a farm, it is not proper, in determining the damages, to show the reasonable market value before and after condemnation of the various tracts separately. * * * [Citing authorities].

"In Welton v. [Iowa] State Highway Commission, 211 Iowa, 625, loc. cit. 632, 233 N.W. 876, 881, this court said:

" 'The law of eminent domain does not contemplate that in fixing the value of a farm plaintiff may cut to pieces his farm and a piecemeal valuation be taken as the basis of valuation of an entire tract before and after condemnation. It is the value as a whole before and after the condemnation and not the value in parcels. * * * *Welton's farm was a single farm, and so treated by both parties.* Neither party claims that the 200 acres (approximately) consisted of two farms. Plaintiff was entitled to have his farm valued as a whole and his damage assessed on that basis.' "

In Jones v. Iowa State Highway Comm., supra, 259 Iowa at 621–622, 144 N.W.2d at 280, where defendant contended it was reversible error to permit plaintiff's experts to testify on direct examination to separate valuations they placed on separate portions of the condemned land, we said:

"These cases hold either party is entitled to a before valuation of the entire tract of the condemnee affected by the condemnation where such tract has been used as a unit. The reason for the rule in the above authorities is that such testimony in effect gives the jury two measures of damages. And where as here the valuation experts also give a total valuation of the before value of the whole tract we said in Lough v. Minneapolis & St. Louis Railroad Co., [116 Iowa 31, 89 N.W. 77] supra, the error was not cured. In the Lough case the valuations experts giving such testimony were the condemnor's witnesses, the reverse is true here. Plaintiffs' claim here, as in the Lough case, was that this error was without prejudice. These plain-

tiffs base their claim of no prejudice however on the further claim one of defendant's valuation experts used the same method. It is only true the defendant's expert used the same method in the sense that he examined all of plaintiffs' land and took into consideration the highest and best use of particular parcels of plaintiffs' land in reaching his before valuation. He did not on direct examination place separate valuations on the separate parcels. That he considered the separate parcels was brought out on cross-examination."

■ As stated in Hoeft v. State, supra, the reason for the rule is twofold: to avoid confusing the fact finder by giving two measures of damage, one for the separate parcels and one for the total unit, and to prevent speculation and establishing a fictitious damage by reason of cutting the farm to pieces. See authorities cited in Jones v. Iowa State Highway Comm., supra.

The trial court erred in overruling commission's objection.

■ This holding does not mean, however, a valuation expert may not accredit his testimony by showing that separate parcels are reasonably adaptable to specific uses. Nor does it mean he may not be cross-examined as to the valuation he placed on such parcels to test his credibility, knowledge and basis of opinion. Jones v. Iowa State Highway Comm., supra, 259 Iowa 622, 144 N.W. 2d at 281. The error was solely in giving specific values to separate portions of the tract on direct examination.

As explained in Division II, supra, even if there may have been error in admission of evidence before the trial court sitting without a jury, reversible error does not necessarily follow. If the trial court affirmatively indicates in its findings of fact or conclusions of law that it discarded the improper evidence, reversible error has not occurred. See in this re-

gard authorities cited, in Division II, supra.

For an example of where the trial court did so indicate see Iowa Development Co. v. Iowa State Hgwy. Comm., supra, 252 Iowa at 991–992, 108 N.W.2d at 495. The court summarily disposed of the allegation of error by saying, "Error is assigned in allowing plaintiffs' value witness Hall to testify to values of separate parts of the development company land. Reliance is upon the rule stated in Hoeft v. State, 221 Iowa 694, 697–698, 266 N.W. 571, 104 A.L.R. 1008, 1011–1012, and citations. It is a sufficient answer to this complaint that in its findings of fact and conclusions of law the court sustained defendant's objections to the testimony complained of and stated it was not considered."

■ But here, unable to find such an affirmative statement in the trial court's findings of fact and conclusions of law, prejudice is presumed and the case reversed by reason of the above error.

IV. In another assignment of error the commission urges that opinions of plaintiff's experts should have been stricken because they were based on an improper measure of damages in that all three assumed fee simple title in plaintiff when in fact condemnee's interest in the property was subject to an outstanding lease.

In its conclusions of law the trial court said:

"* * * The evidence shows that this lease expired March 1 following the taking and in fact would have expired at the time of actual commencement of construction. The court feels there is no merit in defendant's position at this point."

Defendant relies exclusively on Wicks v. Iowa State Highway Comm., 254 Iowa 998, 1006–1007, 119 N.W.2d 781, 786–787. This case involved condemnation of land leased to the Shell Oil Company. With options, Shell had the right to lease the

real estate until 1980. Three value witnesses testified as to before and after values without considering the outstanding lease, one witness later admitting the property being subject to a lease until 1980 would affect its market value. In finding their testimony should have been stricken, this court held that where land taken by eminent domain is already subject to servitude, if existence of the servitude decreases the market value of the fee, it must be taken into consideration in determining the amount of award.

Plaintiff admitted existence of the lease both on and after October 13, 1965, condemnation date, but asserts there is absolutely no evidence here existence of the lease decreased the market value of the fee, a requirement for exclusion under Wicks.

We agree with plaintiff.

■ There was no evidence indicating the lease, if considered by the value witnesses, would have decreased the market value of the condemned real estate. Testimony at trial only revealed Kenneth Rynearson, a tenant farmer, had farmed the land since 1959 on an oral year-to-year lease arrangement. None of the opinion witnesses, as in Wicks v. Iowa State Highway Comm., supra, testified the existence of the lease would have affected the market value of the land.

The court did not err in overruling defendant's motion to strike testimony of plaintiff's experts on the ground urged.

V. In its remaining assignment of error the commission contends the court erred in overruling its objection to testimony of plaintiff's experts as to sale prices of other tracts on the ground it was hearsay and not the best evidence.

Richards, in testifying to the sale price of some 16 other tracts, stated he paid an abstracter for information relative to

sales in this area. Kesterson obtained his information as to at least some of the sale prices referred to in his testimony by personally talking to one of the parties involved in the sale. Brandt, plaintiff's third expert witness, also obtained some information as to sale prices from one of the parties involved.

" 'Hearsay evidence has been defined as testimony in court or written evidence, of a statement made out of court; such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, Evidence, page 460.' Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N.W.2d 868, 875." Crane v. Cedar Rapids & Iowa City Railroad Co., Iowa, 160 N.W.2d 838, 845, affirmed, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176. See also 5 Wigmore on Evidence, Third Ed., section 1361, Vol. 2, section 657 and Vol. 3, section 719.

■ In view of the trial court's finding that the sale prices of various tracts referred to by plaintiff's experts were not considered as substantive evidence of the fair market value of plaintiff's farm as a whole but that the evidence of other sales was considered solely on the issue of highest and best use for the condemned land, the testimony was not subject to the hearsay objection. Assertions of these witnesses as to sale prices of the other tracts were not offered as evidence of their true values.

Under these circumstances the question of best evidence was not involved.

This assignment is without merit.

VI. For reasons pointed out in Division III, supra, defendant is entitled to new trial. Accordingly the case is

Reversed and remanded.

All Justices concur.