Cindy J. HILL, Appellant,

v.

IOWA DEPARTMENT OF EMPLOY-MENT SERVICES, Job Service Division, and Employment Appeal Board, A Division of the Department of Inspections and Appeals, Appellees.

No. 87–1738.

Supreme Court of Iowa.

June 14, 1989.

§ 96.5(2)(a) (1985). On judicial review, the district court and the court of appeals affirmed. On further review, we also affirm.

Hill's discharge resulted from actions she took with respect to "Randy," one of the facility's residents. Randy had been seriously injured in a car accident, and the resulting brain damage caused him to be abusive, profane, and unmanageable at times. He also suffered serious physical impairment as a result of the accident which required him to use a walker or, occasionally, a wheelchair.

On July 8, 1985, Randy fell, and the facility's administrator, Rita Brown, attempted to help him. He refused her help, became profane and unmanageable, and threw his walker at her. On July 10, Randy fell in a hallway and again refused to be helped. Ms. Brown dragged Randy to his room, causing rug burns to his shoulder. On July 22, Randy exhibited similar behavior, exposing himself and urinating into a pop bottle in the facility's dining room. Ms. Brown attempted to remove Randy from the room, he refused, and Ms. Brown again dragged him to his room. When rug burns developed from this incident, Ms. Brown notified Randy's doctor, his mother, members of the care facility's review committee, and the board of supervisors. *See* Iowa Code § 253.8 (board of supervisors charged with oversight of county care facilities).

Hill became upset by Randy's behavior and Ms. Brown's reactions to it. Hill had, herself, been injured by Randy when he pushed her into a chair and fell on her. Hill and a co-employee contacted a member of the county board of supervisors, Robert Brown,[1] concerning Randy. Mr. Brown met Randy and observed his injuries. At this point, there is a discrepancy in the testimony between Hill's contention she showed Mr. Brown only incident reports and Mr. Brown's testimony that Hill read confidential records to him.

Kathy Davenport, the public health nurse, visited the facility to give an injec-

John S. Allen, Des Moines, for appellant.

Richard G. Blane, II of Hansen, McClintock & Riley, William C. Whitten and Blair H. Dewey, Des Moines, for appellees.

LARSON, Justice.

Cindy J. Hill, who had been fired as a certified medication aide at the Union County Care Facility, applied for unemployment benefits. Her application was denied on the ground that she had been discharged for misconduct. *See* Iowa Code

1. Robert Brown will be referred to as "Mr. Brown" to distinguish him from the administra-

tor, Rita Brown, who will occasionally be referred to as "Ms. Brown."

tion to another resident. Davenport saw the rug burns, and Hill showed her Randy's medical records and a photograph of his rug burns. Davenport, in turn, called Mr. Brown who told her that he was already aware of the problems.

Hill also visited with her personal physician, Dr. Goetz, and related to him the problems they were having with Randy. She gave Dr. Goetz one of the rug burn pictures, and he sent it to the board of supervisors with the suggestion that appropriate action be taken by the board. At about this time, Ms. Brown, who had learned of Hill's actions with respect to Randy, terminated Hill's employment.

One of the grounds of Hill's dismissal was insubordination. According to Ms. Brown, Hill had violated personnel policy by not following the complaint procedure set forth in the manual. We do not address that matter because we hold that the second ground for dismissal was sufficient for termination.

The principal basis for Hill's termination was characterized as exhibiting "conduct unbecoming an employee of the County, and of [her] profession." Ms. Brown explained this related to Hill violating Randy's confidentiality rights "by disclosure of his person physically, displaying his body and floor/rug burns, taking unauthorized photographs of the resident, disseminating those photographs beyond those privileged to view such material, and disclosing confidential information in Randy's medical chart to unauthorized persons."

The employee manual provided for confidentiality of certain information concerning residents in this language:

CONFIDENTIALITY

This really should not have to be stated since in a Facility setting confidentiality is a MUST! The residents struggle enough with human dignity! We have no right as employees to tell the world some of the problems individuals may have, and we have absolutely no right to use anyone's name in any of our comments or conversations. BE CAREFUL ABOUT CASUAL CONVERSATIONS!

Similar requirements of confidentiality are also required by state rules which provide:

Each resident shall be ensured confidential treatment of all information contained in his/her records, including information contained in an automatic data bank. His/her written consent shall be required for the release of information to persons not otherwise authorized under law to receive it. Facility limits access to medical records to staff and consultants providing professional service to the resident.

481 Iowa Admin.Code 57.40(1) (formerly found under Iowa Administrative Code chapter 470).[2]

In addition, a resident's "Bill of Rights" was posted around the facility and provided:

EACH RESIDENT has the right to confidential handling of his medical or personal records. This information will only be released with the resident's prior consent except as required by law, or under third party contracts, or in case of transfer to another facility.

Finally, the facility manual included within it a policy manual for residents which stated:

Medical Records:

Your medical records will be kept confidential. The only people that will be able to look at those records are:

1. Physicians

2. Employees of Facility

3. Social workers connected with the Facility

4. Yourself

5. Guardian

6. State Department of Health.

Hill challenges her dismissal for alleged violations of these rules on two grounds: (1) her disclosure of information regarding Randy's case was protected by Iowa Code

**2.** 470 Iowa Admin.Code 57.40 and 57.41 were transferred to 481 Iowa Admin.Code 57.40 and 57.41 on July 15, 1987, and all further references to these sections in the text will be to chapter 481.

section 79.29; and (2) the acts complained of do not amount to misconduct.

## I. *Iowa Code Section 79.29 (1987).*

Iowa Code section 79.29 (1987), known as the "whistleblower" statute, provides in relevant part that

[a] person shall not discharge an employee from ... a position in employment by a political subdivision of this state as a reprisal for a disclosure of information by that employee to ... an official of that political subdivision ... or a disclosure of information which the employee reasonably believes evidences a violation of law or rule, mismanagement, ... an abuse of authority, or a substantial and specific danger to public health or safety. This section does not apply if the disclosure of that information is prohibited by statute.

Hill argues that her disclosure of information to Mr. Brown and Davenport is protected by this statute, because Mr. Brown was a member of the board of supervisors and Davenport was a public health nurse statutorily authorized to enforce state department of health regulations. The board responds that the statute's last sentence takes Hill out of its protection because she had disseminated confidential information in violation of statutes.

Iowa Code section 22.7(2) provides:

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the record, or by another person duly authorized to release such information.

. . . .

2. Hospital records, medical records, and professional counselor records of the condition, diagnosis, care, or treatment of a patient or former patient or a counselee or former counselee, including outpatient.

The records disseminated by Hill to Mr. Brown and Davenport were "medical records" under this section, and Hill does not claim to be either the "lawful custodian" of the records, or "duly authorized" to release them.

Chapter 481, section 57.40 of the Iowa Administrative Code provides:

Resident Records. Each resident shall be ensured confidential treatment of all information contained in his/her records, including information contained in an automatic data bank. His/her written consent shall be required for the release of information to persons not otherwise authorized under law to receive it.

This section prohibited Hill from releasing Randy's treatment records without consent, which was admittedly not procured.

Hill claims that authority to disseminate medical records to county supervisor Brown is provided by this general statute regarding oversight of county facilities by the board of supervisors:

The board shall cause the county care facility to be visited at least once a month by one of its body, who shall carefully examine the condition of the residents and the manner in which they are fed and clothed and otherwise provided for and treated, ascertain what labor they are required to perform, inspect the books and accounts of the administrator, and look into all matters pertaining to the county care facility and its residents, and report to the board.

Iowa Code § 253.8.

She also argues that her dissemination to Davenport was proper under a general statute regarding nurses which provides:

The authorities employing any public health nurses shall prescribe their duties which in a general way shall be for the promotion and conservation of the public health.

Iowa Code § 143.3.

We do not find any authority to disseminate confidential information under either of these sections. Because of the great solicitude shown by statute and administrative rules for the confidentiality of residents' medical records, it cannot be said that the general duties described in sections 253.8 and 143.3 override the specific prohibitions against disseminating confidential medical records. Sections 253.8 and 143.3 only provide general powers for the

board of supervisors and public health nurses, respectively.

Moreover, those who are authorized to receive such records are clearly set forth in 481 Iowa Administrative Code 57.40 which provides that "[t]he facility shall limit access to any medical records to staff and consultants providing professional service *to the resident.*" (Emphasis added.) This provision would statutorily deny dissemination of information concerning Randy to Mr. Brown and to Davenport, neither of whom was providing professional service to Randy.

█ Our statutes guard against disclosure of a resident's medical records except to a narrow and clearly defined group of persons. Additional administrative provisions, discussed above, insure residents' privacy. Hill's actions in violating Randy's rights of confidentiality deprive her of the protection of section 79.29 which, by its terms, is inapplicable to cases in which "disclosure of [the] information is prohibited by statute."

## II. *Misconduct.*

Iowa Code section 96.5(2)(a) provides:

2. *Discharge for misconduct.* If the division of job service finds that the individual has been discharged for misconduct in connection with the individual's employment:

    *a.* The individual shall be disqualified for benefits until the individual has worked in and has been paid wages for insured work equal to ten times the individual's weekly benefit amount, provided the individual is otherwise eligible.

Iowa Administrative Code chapter 370, section 4.32(1) (now found at 345 Iowa Admin.Code 4.32(1)) defines "misconduct" as

    a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which

the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, *or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.*

(Emphasis added.)

Hill argues that any missteps on her part with regard to the "Randy matter" were good-faith errors, not misconduct. Concerning the disclosure of confidential information, she contends that her actions, even if violative of facility policy and state statutes, were nevertheless reasonable.

The board points out that the hearing officer found that these acts were not good-faith errors but were wrongful as evidenced by "an element of concealment" in her actions. The board contends that Hill's actions could serve no worthwhile purpose because Ms. Brown had disclosed the rug burn incident to Randy's mother and guardian, his physician, the care review committee, and the board of supervisors. Hill's purpose, the board claims, was to have Randy removed because Hill did not want to care for him—not to protect Randy—and this motive demonstrates a lack of good faith.

The hearing officer found that Hill had gone beyond the scope of her job duties and became, in essence, an "unauthorized investigating agent." The hearing officer also found that Hill had "her own goals," that her actions were "continuous and repeated," and that she knew her actions were wrongful as evidenced by her concealment.

█ We must affirm the agency's findings of fact unless the findings are unsupported by substantial evidence when the

record is considered as a whole. *See Morrison v. Century Eng'g*, 434 N.W.2d 874, 876 (Iowa 1989). Substantial evidence is evidence that a reasonable mind could accept as adequate to reach the same findings. *Sallis v. Employment Appeal Bd.*, 437 N.W.2d 895, 896 (Iowa 1989). Applying these tests here, there was sufficient evidence to support the agency's ruling.

It is undisputed that Hill disclosed medical records to Davenport, and there was also substantial evidence that Hill showed protected medical records to Mr. Brown. These acts were prohibited by statute, administrative rules, and the rules of the care facility, as discussed above.

Hill contends that, even if these acts were established to be improper, she acted as she did for Randy's benefit, not out of any personal motives. Her subjective belief, however, is not controlling. The test of good faith is objective, and while the subjective understanding and intent of a claimant are relevant on the question of misconduct, they are not the end of the inquiry. The key question is what a reasonable person would have believed under the circumstances. *See Aalbers v. Iowa Dep't of Job Serv.*, 431 N.W.2d 330, 335–36 (Iowa 1988).

The hearing officer found that Hill's actions were "continuous, repeated, and evidenced a scheme ... to use the resident's medical records in the pursuit of her own goals," thus rejecting Hill's claim that she had acted out of concern for the resident. There was substantial evidence to support the hearing officer's finding on the question of good faith and on the underlying question of misconduct. Accordingly, we affirm the court of appeals and the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except CARTER, SCHULTZ and SNELL, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

The majority incorrectly assumes that the misconduct issue in this case is one of fact on which the agency must be affirmed under the substantial evidence rule. Because there is no serious dispute on any of the material issues of fact, the ultimate determination of whether misconduct occurred is necessarily one of law. As this court recognized many years ago, it is a "settled principle that whether a given state of evidence entitled a party to go to the jury is itself a question of *law*, and not of fact...." *Jones v. Sioux City*, 192 Iowa 99, 102, 182 N.W. 644, 645 (1921). The same principle is true in testing the sufficiency of evidence to sustain a decision of an administrative agency.

Before discussing the issue on the merits, I believe some statement is warranted as to this court's practice of continually paying lip service to a supposed burden of proof on the employer seeking to establish a misconduct disqualification (as per 345 Iowa Admin.Code 4.32(4)), but then approving misconduct findings made by the agency sua sponte in inquisitorial, nonadversary proceedings. In case after case, the agency acts on its own initiative to cause such disqualifications without regard to whether an adversary position has been taken by the employer. The supposed adversary proceeding is in fact a conflict between the claimant and the agency acting as both contestant and adjudicator. Any pretense that the claimant does not bear the burden of proof in such a proceeding is completely without basis.

On the merits of the present case, the issue is simple. Does an employee of a licensed facility subject to oversight by the county board of supervisors have the same right to urge the oversight board to take action as that which is enjoyed by any other citizen of the county. I submit that the answer to this question necessarily has to be in the affirmative. The information communicated to the board member in the present case was only that of which the claimant was possessed with first-hand knowledge based on her own observations. The records which were shown to the board member added nothing to the detail of the

communication but only corroborated that information which the claimant was free to communicate by word-of-mouth.

If the care facility had kept a log of these incidents separate from the personal records of the patient, the information which was disseminated would have been subject to oversight by the board of supervisors. The care facility should not be able to hide a series of traumatic incidents of the type involved in the present case from the scrutiny of the board by only making note of such occurrences in those records shielded by confidentiality.

There is absolutely no evidence in the present record that will permit a finding that the claimant's motives were other than a desire to communicate to the board of supervisors that information which she believed the board was entitled to have. There has been no showing, nor has any claim been made, that she acted out of any malicious motive toward her superiors.

I would hold that the record shows as a matter of law that petitioner's actions were undertaken in good faith and that such actions were not those which, under controlling principles of law, give rise to a misconduct disqualification.

SCHULTZ and SNELL, JJ., join this dissent.