JAMES HARTMAN, appellee, v. L. R. NORMAN and BILL NORMAN, a partnership doing business as the NORMAN MOTOR COMPANY, and CHARLES COY, appellants.

No. 50477

DECEMBER 12, 1961.

REHEARING DENIED MARCH 5, 1962.

Cory & Sackett, of Spencer, for appellants.

Fitzgibbons & Fitzgibbons, of Estherville, for appellee.

SNELL, J.—This is an action for damages following a collision of an automobile owned and operated by plaintiff, James Hartman, with an automobile operated by defendant Charles Coy. The automobile driven by Coy was of record in the name of Norman Motor Company at the time of the accident. The collision occurred in 1957. Trial of this case was stayed while plaintiff was in military service. Plaintiff sued Coy as driver and defendants Norman as owners of the car allegedly driven with their knowledge and consent.

Norman Motor Company is a partnership. For brevity, the partnership and the partners will be referred to as Norman Motors or defendants Norman. Defendant Coy made no defense other than to plead a discharge in bankruptcy. At the trial plaintiff's claims that negligence of defendant Coy was the proximate cause of the collision and that plaintiff was free from contributory negligence were not controverted.

Norman Motors urged as a defense that prior to the collision it had made a bona fide sale and delivery of possession of the car to defendant Coy and was not liable as owner for Coy's negligence. Motions by defendants Norman for a directed verdict made at the close of plaintiff's evidence and at the close of the evidence were overruled. The trial court submitted to the jury the question of whether or not a bona fide sale and delivery of possession had been made as contended, and if liability existed, the amount of plaintiff's damage.

The jury returned a verdict for plaintiff in the sum of $4500. Motions for judgment notwithstanding the verdict and for a new trial were overruled. Norman Motor Company, the partnership and the individual partners appeal.

Appellants urge three grounds for reversal: (1) that the trial court erred in submitting to the jury the question of whether or not a bona fide sale and delivery of possession had been made; (2) that the verdict and judgment of $4500 was excessive and the result of passion and prejudice on the part of the jury; (3) that the court erred in refusing to reopen the trial for the introduction of evidence omitted by oversight and mistake, or newly discovered.

The record before us was settled by stipulation and order of the trial court. We quote from the record: "That no exceptions, or objections to the Instructions were made by either party to the Appeal. Further, neither party to this Appeal made a request for any instructions that were refused. That before the instructions were submitted both parties hereto consented and agreed to the instructions that were submitted." Appellee contends that appellants consented to submission of instructions to the jury regarding ownership and bona fide sale and may not now challenge the sufficiency of the evidence to warrant such submission.

I. As appellee challenges appellants' right to be heard on a material issue, we will consider it first. Appellee's contention is not in accord with our rules or decisions. Rule 331(b), Rules of Civil Procedure, provides that no error in an interlocutory ruling or decision is waived by pleading over or proceeding to trial. On appeal there may be assigned as error such inter-

locutory ruling or decision where such ruling is shown to have substantially affected the rights of the complaining party.

In Heavilin v. Wendell, 214 Iowa 844, 853, 241 N.W. 654, 658, 83 A. L. R. 872, the defendant moved for a directed verdict. The motion was overruled. Thereafter defendant asked for instructions under the law thus fixed by the court's ruling. It was held that by asking such instruction defendant did not waive the error of the court in the ruling previously made on the motion to direct.

After reviewing the authorities, Justice Albert speaking for the court said: "* * * we now fix the ruling to be that where a party makes a motion for a directed verdict and the court overrules the same, the person against whom such ruling is made does not waive the error, if there is one, in the court's ruling on a motion to direct a verdict by asking instructions which correctly state the law of the case as fixed by the court's ruling on the motion to direct a verdict. * * *." Cases to the contrary were specifically overruled. This case, decided in 1932, was prior to the adoption of rule 331(b) mentioned above, but the principle stated therein has not been changed. In the cited case the defendant, after the court's ruling on the motion to direct, asked for instructions *under the law thus fixed by the court's ruling*. (Emphasis supplied.) In the case at bar, the court's ruling held that there was a question of fact for the jury. As said in the Heavilin case, supra, it was defendant's duty to bow to that ruling and proceed. The correctness of the court's instructions to the jury has not been challenged, but we have examined them to determine if defendants actually waived any error. If there was a question for the jury as determined by the court's ruling, the instructions were correct. By agreeing thereto defendants did nothing except agree that they correctly stated the law. Defendants did not agree that there was a case for the jury.

The Heavilin case, supra, is cited with approval and followed in Kinney v. Larsen, 239 Iowa 494, 31 N.W.2d 635. This case also refers to the spirit and effect of rule 331(b). See also Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1195, 91 N.W.2d 380. Defendants' consent to the instructions did not waive the right to challenge the rulings on the motions to direct.

II.   At all times material herein defendant Norman Motors was a licensed motor vehicle dealer operating a sales agency and garage. Richard (Dick) Chaplin was employed as a salesman. Sometime before noon on October 8, 1957, defendant Coy appeared at the garage and told salesman Chaplin that he wanted to buy an automobile and how much he wanted to pay. Chaplin showed and demonstrated some cars, including a 1949 Ford involved in this case. In addition to the demonstration, Coy checked with the former owner as to the condition of the car. Sale price and terms of payment were discussed and agreed to. The sale price was $175. Down payment of $70 was made by trading in some used tires and the remainder was to be paid in three installments during the ensuing six weeks. To reduce the agreement to writing, Coy and Chaplin went to the garage office. A retail buyer's order on a printed form used by Norman Motors was, except for the motor number, made out and signed by Coy and by Chaplin for Norman Motors. By this written agreement, Coy agreed to purchase the car in question. It was provided that "delivery of this purchase is to be made 10-8, 1957, or as soon thereafter as possible." This agreement was completed during the noon hour. The partners owning the business were not in the office. The Iowa Dealer Purchase Receipt showing the transfer to Norman Motors from the former owner and the Certificate of Title were in the safe. Chaplin did not have access thereto. This was explained by Chaplin to Coy. Chaplin asked Coy to return later to get the title certificate, registration receipt and necessary assignments. Coy said he would do so. Coy received a copy of the buyer's order complete, except for motor number and notations made later by Bill Norman, delivered the tires traded in, took possession of the car and drove away. He did not return for the title certificate and never did anything to change the registration of the car to himself. He retained the use and possession of the car. When Bill Norman, one of the partners, returned from lunch he wrote "Accepted" on the order, wrote in the motor number, took the title certificate from the safe, caused to be executed the Reassignment by Iowa Licensed Dealer and executed the notice of Assignment of Certificate of Title. Bill Norman then gave these documents to Chaplin for delivery to Coy. Chaplin put them in

his pocket where they remained until after the collision between Coy and plaintiff.

The installment payments to be made by Coy were carried on open account. No finance papers or conditional sales contracts were contemplated or executed. On October 15, 1957, seven days after delivery of possession of the car and seven days before the first cash payment was due, Coy was involved in the collision with plaintiff that resulted in this lawsuit.

When defendants Norman learned after the accident that record title to the car had not been changed to Coy they became concerned. They had also been delinquent by a few days in recording the transfer from the former owner to them. In conversations with the County Treasurer, they inquired as to what could be done and available procedure. They were obviously proceeding from fear but there is nothing in the record to indicate that defendants Norman actually attempted any alteration of the public records. Nothing happened as a result of these conversations. Plaintiff infers from the record title and the concern of defendants Norman relative thereto that Norman Motors was actually the owner of the car and considered themselves the owner within the meaning of the Owners' Responsibility Statute. We do not agree.

The day after the collision plaintiff's father visited defendant in the hospital where he was a patient. He testified, "I asked Coy who owned the automobile he was driving and he said he hadn't signed any papers on the car and that he was trying it out. He said he got the car from the Norman Motor Company of Spirit Lake." This evidence was of no value in the face of the written buyer's order that he admitted signing and his subsequent testimony.

On November 15, 1958, defendant Coy, by his counsel, filed answer admitting that at the time of the accident the 1949 Ford was owned by defendants Norman, admitted that title to said automobile was then in the name of the Norman Motor Company and admitted he was then driving said 1949 Ford with the permission and consent of defendants Norman. Conclusions and statements made in an unverified answer signed by the attorney who may or may not have known the facts are not binding on

defendants Norman. Coy later amended his answer, stating that on November 17, 1958 (two days after his attorney filed answer), he filed his voluntary petition for bankruptcy and included in his petition plaintiff's claim and that on January 17, 1959, an order was entered discharging him from all provable debts, including plaintiff's claim. When called as a witness at the trial, Coy corroborated the testimony as to the purchase of the car, admitted signing of the purchase order and possession of the car. He denied the accuracy of the statements attributed to him by the plaintiff's father. He admitted owing Norman Motors $105 on the sales order for the car and listing Norman Motors as a creditor in his bankruptcy schedule of liabilities.

After the collision, towing and storage charges accrued against the Ford car salvage. Defendants Norman sold the salvage for $30, paid the towing and storage charges of $25 and credited defendant Coy with the remaining $5.00. From this, plaintiff argues that Normans exercised the rights of an owner. The testimony as to sale of the salvage by Normans was in plaintiff's rebuttal.

Introduction of evidence was completed about noon. The trial court, stating that time was required for resolving legal problems and preparation of instructions, excused the jury until nine o'clock the next morning.

About 1:35 p.m. the same day, defendants by motion asked permission to reopen the case and introduce surrebuttal evidence, consisting of testimony of Charles Coy that after the accident but before the sale of the Ford salvage he told Normans to sell the salvage, pay the storage and towing charges and apply any balance on his account with Normans. In the motion, counsel for defendants stated that information as to this evidence did not come to his attention until after the plaintiff's rebuttal and the excusing of the jury for the afternoon. The court refused permission to reopen.

If there was a question for the jury, we think permission should have been granted. The testimony, if given, would have directly refuted the inferences to be drawn from plaintiff's rebuttal. The testimony was about an incident that occurred

nearly three years before the trial. That the witness should recall the details only after mention by another was not unusual. If there was a question for the jury, the evidence was important. That it was newly discovered was alleged and in no way refuted. It would have met an issue tendered by plaintiff, but it raised no new issue against which plaintiff would have to prepare. Its admission would not have required any change in the instructions. Its admission would have taken only a few minutes. It was proper surrebuttal.

■ III. At the time of the collision Norman Motors was the record owner of the car. Under statutes where liability depends on ownership of a car, proof of registration makes out a prima-facie case of ownership in the registrant. This has been called an inference of ownership. It may be met and overcome by positive evidence. Registration does not establish ownership. Sexton v. Lauman, 244 Iowa 570, 57 N.W.2d 200, 37 A. L. R.2d 353; Bash v. Hade, 245 Iowa 332, 62 N.W.2d 180; ·Craddock v. Bickelhaupt, 227 Iowa 202, 288 N.W. 109, 135 A. L. R. 474.

Plaintiff herein and the cited cases rely strongly on Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 221 N.W. 514, on the question of ownership and the right to a jury determination of the question. Except for a change in the statute, these cases would be quite persuasive, but they were decided before the enactment of section 8, chapter 157, Acts of the Fifty-sixth General Assembly, now the second paragraph of section 321.493 of the Code.

■ IV. The only basis for plaintiff's claim is the first paragraph of section 321.493 of the Code, commonly called the consent statute or the Owners' Responsibility Law. Vicarious liability of a car owner for the negligence of the driver is a creature of statute and not of the common law. At common law a person was, in general, only vicariously liable in tort where the tort was committed by his agent or servant in the course of the agency or employment.

Section 321.493 of the Code provides:

"321.493 Liability for damages. In all cases where damage is done by any motor vehicle by reason of negligence of the

driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

"A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made."

The first paragraph of this statute has been a part of our statutory law in substantially its present form since 1919. The second paragraph in its present form was added to this statute in 1955 by section 8, chapter 157, Acts of the Fifty-sixth General Assembly.

Prior to the 1955 action of the Fifty-sixth General Assembly, relief of a former owner was found in section 321.51, Code of 1954, and prior Codes, providing:

"321.51 Former owner not liable for negligent operation. The owner of a vehicle who has made a bona fide sale or transfer of his title or interest and who has delivered possession of such vehicle to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another."

In 1953 the Fifty-fifth General Assembly enacted the Motor Vehicle Certificates of Title Law, chapter 127, Acts of the Fifty-fifth General Assembly. This was "AN ACT relating to the origination of titles to motor vehicles, * * * the issuance and transfer of registrations and certificate of title to the same, * * *."

Many changes in the law relating to registration and proof of ownership were made and a number of former statutory provisions were repealed, but there was no reference to the sections having to do with owners' liability.

Chapter 157, Acts of the Fifty-sixth General Assembly, repealed section 321.51, Code of 1954, quoted above, and added to section 321.493 what is now the second paragraph.

This was clearly for the purpose of clarifying a confusing situation.

Between the effective date of the Certificates of Title Law (October 1, 1953) and the effective date of the addition to section 321.493 (July 4, 1955), problems arose involving car owners who had sold but not completed the change of title. See articles by Professor Richard S. Hudson, 3 Drake Law Review 3, 4 Drake Law Review 86, and 5 Drake Law Review 31.

Judge Graven of the United States District Court for the Northern District of Iowa in Federated Mutual Implement & Hardware Insurance Co. v. Rouse, 133 F. Supp. 226, had the problem of interpreting the Certificates of Title Law and its effect on the Owners' Responsibility Law. The case was a declaratory-judgment action to determine the responsibility of a vendor under a conditional sales contract for negligence of the vendee. The seller had not, at the time of the accident, completed the necessary assignment of the certificate of title, but had instead held it in his possession. The opinion analyzes the development of the statutory law and the cases decided thereunder.

The case holds that an automobile dealer who had purchased a used car and resold it under conditional sales contract was not an owner within Iowa Owners' Responsibility Law, even though he had failed to comply with Iowa Motor Vehicle Certificates of Title Act and had failed to provide for new certificate.

Chapter 157, Acts of the Fifty-sixth General Assembly, now the second paragraph of section 321.493 of the Code, was enacted subsequent to the occurrences involved but prior to the opinion and so was not applicable. It is interesting, however, to note the comment that the next session of the legislature after the enactment of the Certificates of Title Law specifically provided that the pertinent sections of the Owners' Responsibility Law were without the scope of the Certificates of Title Act.

We can think of no purpose in the enactment of what is now the second paragraph of section 321.493 other than to cover situations such as we have in the case before us. The statute is definite and specific. It provides that a person who has made a bona fide sale and who has delivered possession to the pur-

chaser shall not be liable for any damage thereafter resulting from negligent operation by another. It also provides that subsection 2 of section 321.45 (the provision for proof of ownership by certificate of title) shall not apply in determining, for the purpose of fixing liability, whether such sale was made. The question under this statute is not who may own the vehicle or have a lien according to the county records. It is not who may owe for the purchase price or how the indebtedness is evidenced. If there was a bona fide sale and delivery of possession, the statute relieves the seller from liability for subsequent negligence of the operator.

Under the statute the title registration law is not applicable in determining liability in the case before us. Even before this statute an inference of ownership could be overcome as a matter of law. The official record raises an inference of ownership but it is at best a rebuttable presumption. Where it is fully overcome by the evidence, the issue is for the court; if the evidence is conflicting, it is for the jury. King v. Mack International Motor Truck Corp., 245 Iowa 48, 60 N.W.2d 792. This case was decided in 1953 prior to the amendment to section 321.493.

In the case before us the uncontradicted evidence shows that defendant Coy by written instrument agreed to purchase the car in question. There was a bona fide sale. The down payment was made. Possession was delivered. Coy took and retained possession. Under the statute he was the owner for the purpose of determining liability. Under the statute defendants were not liable.

There is nothing ambiguous in the sales contract or buyer's order signed by Coy and the salesman for Norman Motors. Its validity and construction was a matter of law for the court and not a question of fact for the jury. Rice v. Sioux City Memorial Park Cemetery, 245 Iowa 147, 60 N.W.2d 110.

At the close of the evidence there was no question of fact for the jury. Defendants' motion for directed verdict made at the close of the evidence should have been sustained.

The size of the verdict for the damages sustained appears punitive rather than compensatory. Because of our conclusion that the case must be reversed on other grounds, we need not discuss this issue.

The case is reversed and remanded for the entry of an order dismissing plaintiff's claim.—Reversed.

All JUSTICES concur except BLISS, J., not sitting.