Loren HOLDSWORTH, Plaintiff–Appellant,

v.

Donald NISSLY, Farm Bureau Life Insurance Company, FBL Insurance Company, and Farm Bureau Mutual Insurance Company, Defendants–Appellees.

No. 93–0250.

Court of Appeals of Iowa.

May 26, 1994.

Brent R. Appel and Helen C. Adams of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellant.

Gale E. Juhl and Michele Gooding of the Juhl Law Office, Des Moines, for appellees.

Heard by SACKETT, P.J., HABHAB, J., and SCHLEGEL, S.J.*

HABHAB, Judge.

In 1982 plaintiff Loren Holdsworth became employed as a career agent with Farm Bureau Life Insurance Company, FBL Insurance Company, and Farm Bureau Mutual Insurance Company. These three companies have combined management and will be referred to collectively as "Farm Bureau." Holdsworth was hired to solicit applications for insurance and to service policyholders' accounts. He signed a new contract each year he was employed by Farm Bureau. Each contract could be canceled by either party at any time without cause upon the giving of notice in writing to the other party.

Holdsworth was assigned to the Dallas–Madison Agency. His supervisor was Donald Nissly. Nissly had been a career agent before he was promoted to area manager. Nissly had developed a list of accounts in rural Dallas County, which was referred to by the parties as a "book of business." Holdsworth inherited this book of business when he began working for Farm Bureau.

In 1990 Nissly came under pressure from Farm Bureau management because of his inability to recruit new career agents. Nissly drafted a written proposal in May 1990 which he presented to his supervisor, Christopher Van Note. The proposal stated Nissly would like to stay in his present position

until the end of 1990 and then he would take a position as a career agent. It also stated:

> Loren Holdsworth has expressed misgivings about adjusting to a sometime new A.M. [area manager] and maintaining company production expectations. It would be in *everyone's* best interest for him to decide on a career change for reasons important to him and his family.

Van Note discussed the proposal with Nissly, and in his notes of the meeting wrote that Nissly wanted to remain for the balance of 1990 and during this period to remove Holdsworth as an agent, which would give Nissly his old book of business. Van Note agreed to the proposal, subject to the conditions that Nissly make progress with recruiting and keep him informed of the situation in the agency.

In August 1990 Nissly and Van Note had a meeting with Holdsworth to inform him he would be terminated as a career agent in the Dallas–Madison Agency at the end of the year. Holdsworth went to Van Note's supervisor, Ronald Price, and asked to keep his job. Price told Holdsworth he would have Van Note meet with him again. At this second meeting, Van Note told Holdsworth a story about a former student. Holdsworth interpreted the story as a warning Van Note was unhappy he had gone to Price with his concerns. Van Note refused to reconsider his previous decision.

In September 1990 Holdsworth sent a letter to Price, asking him to discharge Van Note. He also sent letters to several Farm Bureau officials, complaining about his treatment by Nissly and Van Note. On September 17, 1990 Price called Holdsworth into his office and discharged him.

Holdsworth filed this suit against Nissly and Farm Bureau. He claimed Nissly tortiously interfered with his contract with Farm Bureau by attempting to cause his discharge. He also raised an unjust enrichment claim against Nissly. Holdsworth claimed Farm Bureau tortiously interfered

* Senior judge from the Iowa Court of Appeals     serving by order of the Iowa Supreme Court.

with a prospective business advantage with his insurance clients by discharging him.[1]

The claims of interference with a prospective business advantage and interference with an existing contract were tried to a jury. The parties agreed to try the unjust enrichment claim against Nissly to the court. After plaintiff presented his evidence, defendants filed a motion for directed verdict. The district court reserved ruling on the motion. The case was submitted to the jury.

On a special verdict form, the jury found Nissly had intentionally and improperly interfered with Holdsworth's career agent contract. Holdsworth was awarded $6,000 in damages against Nissly for past lost income, but no damages for future loss of income or emotional distress. The jury awarded $10,000 punitive damages against Nissly. It also found Nissly's conduct was not directed specifically at plaintiff.

The jury found Farm Bureau had intentionally and improperly interfered with Holdsworth's prospective business relationships with insurance clients. He was awarded $102,597 for past lost income and $190,258 for future loss of income. No damages were awarded for emotional distress. $1 million in punitive damages was awarded against Farm Bureau. Again, the jury found Farm Bureau's conduct was not directed specifically at Holdsworth.

Holdsworth filed a motion for new trial against Nissly only on the issue of damages. Defendants filed motions for new trial and judgment notwithstanding the verdict. The district court issued one ruling on all posttrial motions, including the reserved motion for directed verdict.

The district court granted a new trial against Nissly on liability and damages. The court determined that if the verdict against Farm Bureau accurately reflected the jury's findings on past and future economic loss from the discharge, the award against Nissly was both inconsistent and inadequate, and a strong inference arose it was the product of prejudicial ulterior motive. The court noted the disparity between the damages against Nissly and Farm Bureau for future loss of

income. The court denied Nissly's motion for judgment notwithstanding the verdict, finding there was substantial evidence in the record to show Nissly convinced Farm Bureau to terminate Holdsworth's contract and give him Holdsworth's book of business.

The court dismissed the unjust enrichment claim against Nissly. The trial court found Holdsworth had an adequate remedy at law under a theory of tortious interference with an existing contract. This ruling has not been appealed.

The court granted Farm Bureau's motions for directed verdict and judgment notwithstanding the verdict. The court determined plaintiff failed to present any evidence Farm Bureau acted improperly because under the parties' contract, Holdsworth could be discharged at any time. Holdsworth appealed.

**I.** Holdsworth contends defendants failed to preserve error at trial on the issue of the sufficiency of the evidence because they only raised a general objection to the jury instructions. He believes defendants should not have been able to raise the issue of the sufficiency of the evidence in their posttrial motions.

■ Where the district court overrules a motion for directed verdict, a party does not waive error by agreeing to jury instructions which correctly state the law. *Hartman v. Norman,* 253 Iowa 694, 697, 112 N.W.2d 374, 376 (1961). By agreeing to the jury instructions, defendants are not agreeing there was a case for the jury. *Id.* We conclude defendants sufficiently preserved error to raise the issue of the sufficiency of the evidence in posttrial motions.

**II.** Holdsworth contends the district court should not have granted a directed verdict and judgment notwithstanding the verdict to Farm Bureau on his claim of interference with prospective business advantage. He claims there was sufficient evidence of Farm Bureau's improper motive or conduct to submit the issue to the jury. He points out that the district court found there was substantial evidence of Nissly's improper motive. Holdsworth states Farm Bureau con-

---

1. Holdsworth voluntarily dismissed a breach of     contract claim against Farm Bureau.

sented to Nissly's scheme and shared in his improper motive. He claims Farm Bureau discharged him in retaliation for using the company's "open door" policy to complain about his treatment by Van Note and Nissly.

In our review of a trial court's ruling on a motion for directed verdict or judgment notwithstanding the verdict, the question is whether the evidence, when viewed in the light most favorable to the plaintiff, was sufficient to generate a jury question. *Nesler v. Fisher & Co.*, 452 N.W.2d 191, 193 (Iowa 1990). Even if the facts are not in dispute, if reasonable minds might draw different inferences from them, a jury question is engendered. *Toney v. Casey's General Stores, Inc.*, 460 N.W.2d 849, 852 (Iowa 1990).

To recover for interference with prospective contractual relations, plaintiff must prove: (1) it had a prospective contractual or business relationship; (2) defendant knew of the prospective relationship; (3) defendant intentionally and improperly interfered with the relationship; (4) defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages. *Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 396 (Iowa 1990).

In a claim of intentional interference with a prospective business advantage, the plaintiff is held to a strict standard of substantial proof the defendant acted with a predominantly improper purpose. *Hoefer v. Wisconsin Education Ass'n Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991). In such cases, the plaintiff must prove the defendant intended to financially injure or destroy the plaintiff. *Burke v. Hawkeye Nat'l Life Ins. Co.*, 474 N.W.2d 110, 114 (Iowa 1991).

Holdsworth claims this case is similar to *Burke*, where an insurance company was found to have improperly interfered with an insurance agent's contractual rights to renewal commissions. *Burke*, 474 N.W.2d at 115. The company hired a new sales force, which it allowed to compete with its established independent agents. *Id.* at 112. The court found substantial evidence the compa-

ny's actions were improper by industry standards. *Id.* at 115.

We find *Burke* distinguishable. In *Burke*, it was clear the defendant's actions were intended to interfere with the plaintiff's prospective business relations. *Id.* at 112. There is no evidence in the present case Farm Bureau's actions were intended to interfere with Holdsworth's prospective business relations. Also, in *Burke*, there was evidence the defendant's actions were improper. *Id.* at 115. We find no such evidence of improper conduct here.

In *Preferred Mktg.*, the supreme court found the defendant had not acted improperly when it did what it was entitled to do under its contract with plaintiff, which was to terminate the contract at will. *Preferred Mktg.*, 452 N.W.2d at 396. Conduct is generally not considered improper if it is fair and reasonable under the circumstances and done for a legitimate business purpose. *Toney*, 460 N.W.2d at 854. The improper motive must be an intent to financially injure or destroy the plaintiff. *See Nesler*, 452 N.W.2d at 199.

We find no evidence in the record to show Farm Bureau's predominant purpose in discharging Holdsworth was to financially injury or destroy him. Further, Farm Bureau's conduct was not improper because under the career agent contract, it was entitled to discharge Holdsworth at any time without cause.

We affirm the decision of the district court granting defendants' motions for directed verdict and judgment notwithstanding the verdict on plaintiff's claim of tortious interference with prospective business relations.

III. Under Iowa Rule of Civil Procedure 248, if a district court grants a motion for judgment notwithstanding the verdict, the court should also rule on the motion for new trial because of the possibility the ruling on the motion for judgment notwithstanding the verdict is vacated. The district court granted Farm Bureau's motion for new trial based on inconsistencies in the verdict and Holdsworth objects to this ruling on appeal. We have affirmed the district court's grant of Farm Bureau's motion for judgment notwith-

standing the verdict, and need not address this issue.

**IV.** Finally, Holdsworth contends the new trial against Nissly should be limited to the issue of damages. He believes the jury's determination of Nissly's liability was supported by the evidence and should not have been disturbed by the trial court.

In ruling upon motions for new trial the trial court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between parties. Iowa R.App.P. 14(f)(3). This court is slower to interfere with the grant of a new trial than with its denial. Iowa R.App.P. 14(f)(4).

The district court found the jury's verdicts were inconsistent. The court noted Holdsworth claimed only one ultimate act damaged him, the termination of his career agent's contract. Nissly was alleged to have caused the termination and the insurance companies to have committed the act. However, the jury verdicts found the termination of the contract by Farm Bureau resulted in $190,258 in future loss of income, but the termination caused by Nissly resulted in no future loss of income.

The court concluded the jury was motivated by a desire to make the insurance company solely responsible for a substantial amount of the damages, by passion and prejudice against insurance companies, by sympathy for Nissly as an individual, or by some combination of these factors. The court granted a new trial due to its conclusion the verdict was affected by improper considerations.

The general rule is that a jury's verdicts are to be liberally construed to give effect to the intention of the jury and to harmonize the verdicts if it is possible to do so. *Hoffman v. National Medical Enters., Inc.*, 442 N.W.2d 123, 126 (Iowa 1989). The test is whether the verdicts can be reconciled in any reasonable manner consistent with the evidence and its fair inferences, and in light of the instructions of the court. *Id.* at 126–27. Only where the verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside. *Id.* at 127. Where verdicts are clearly inconsistent and there is no way to determine which verdict is inconsistent with the jury's intent, the proper remedy is a new trial. *Id.*

We determine the jury's findings on damages against the two defendants, Nissly and Farm Bureau, were inconsistent in this case. Further, there is no means of determining which verdict is inconsistent with the jury's intent. We conclude the district court did not abuse its discretion in granting a new trial against Nissly. As a general rule, new trials will be granted as to the whole case and on all of the issues, and seldom on the issue of damages only, except where liability of a defendant is definitely established. *Householder v. Town of Clayton*, 221 N.W.2d 488, 493 (Iowa 1974). We find a new trial on the whole case is the appropriate remedy here.

We affirm the district court on all issues raised in this appeal, whether discussed by us in this opinion or not. Costs of this appeal are assessed to plaintiff.

**AFFIRMED.**