**Bob BERGQUIST, Plaintiff–Appellee,**

v.

**MACKAY ENGINES, INC., Defendant–Appellant.**

No. 94–464.

Court of Appeals of Iowa.

June 27, 1995.

Craig D. Warner of Aspelmeier, Fisch, Power, Warner & Engberg, Burlington, for appellant.

R.L. Fehseke, Jr. of the Fehseke Law Offices, Fort Madison, for appellee.

Considered by HABHAB, P.J., CADY, J., and KEEFE, Senior Judge.*

KEEFE, Senior Judge.

The plaintiff, Bob Bergquist, is a self-employed automobile mechanic and parts dealer specializing in four-wheel drive repair. Bergquist's hobby is mud racing, which involves driving a four-wheel drive vehicle through a specially constructed mud pit. He testified his participation in mud racing has helped advertise his business of selling parts for four-wheel drive vehicles.

In 1990, Bergquist planned to move up to a different class in mud racing. He purchased an engine from Marvin Helling. Helling had purchased the engine from Bob Cullen. Cullen had modified the engine for racing purposes by taking a stock Chevrolet 454 cubic inch engine and boring it out to accommodate larger pistons. Cullen added light-weight aluminum pistons and rods, and a high-rise intake. The engine, as originally built, was externally balanced by a weighted torsional damper, also known as a harmonic balancer. A torsional damper is a circular steel sleeve attached to the crankshaft and is surrounded by a rubber ring, which in turn is surrounded by another steel ring. The purpose of a torsional damper is to limit the vibration of the engine.

Cullen internally balanced the engine by adding a heavy metal to the crankshaft. Because the engine was internally balanced, the external balancing agent of the weighted torsional damper was no longer needed and it was discarded. Cullen placed a 396 torsional damper on the engine. The new torsional damper was not weighted, and thus, did not disturb the balance of the internally balanced engine.

After purchasing the engine, Bergquist took the engine to John Kirchner, doing business as Kirchner's Garage, to have the engine cleaned and inspected. Kirchner was aware Bergquist intended to use the engine

for racing. Bergquist asked Kirchner to replace the aluminum pistons with heavy-duty ones. This change required the engine to be rebalanced. Kirchner sent the engine to Mackay Engines, Inc. for balancing because it did not have the necessary equipment itself. Kirchner testified he could not recall whether he had told Mackay that the owner intended to use the engine for racing. Jim Mackay, owner of Mackay's Engines, testified he was not told of the intended use for the engine. Mackay balanced the engine and returned it to Kirchner.

Bergquist picked up his engine from Kirchner on July 21, 1990. When he received the engine, holes had been drilled in the outer sleeve of the torsional damper. There had been no holes in the torsional damper when he delivered it to Kirchner. Bergquist installed the engine into his racing vehicle later that same day. He started the engine, adjusted the timing and set the carburetor. When he revved up the throttle for the first time, the outer sleeve of the torsional damper blew apart and propelled shrapnel into Bergquist's leg. Following the accident, Bergquist was unable to work for three months. He was ultimately allowed to return to work on a limited basis.

Bergquist filed a petition against Mackay Engines and Kirchner alleging negligence, breach of implied warranty of fitness, breach of implied warranty of merchantability, and strict liability. Plaintiff claimed damages for past medical expenses, lost income, loss of body function, and pain and suffering. He later voluntarily dismissed his petition against Kirchner.

At trial, all parties agreed the holes drilled into the torsional damper created a dangerous condition. Mackay, Kirchner and Bergquist all denied placing the holes in the torsional damper. Mackay and Kirchner also denied that the torsional damper which was presented at trial was the one they had previously seen. Bergquist testified he was no longer as active as in the past, and this had caused reduced earning capacity. He

---

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

also claimed that he lost significant potential winnings from the mud racing circuit. The jury found Mackay to be eighty percent at fault and Kirchner twenty percent. The jury awarded Bergquist $97,195.

Mackay subsequently filed a motion for judgment notwithstanding the verdict. The district court denied the motion but did find the award for past medical expenses was excessive. The court reduced the total award by $200, which reduced Bergquist's damages to $96,995. Mackay has appealed.

**I.** Mackay contends there was insufficient evidence to warrant the submission of the count on breach of implied warranty of fitness for a particular purpose. It alleges there was no evidence presented to show that it knew Bergquist intended to use the engine for a particular purpose, namely mud racing. Mackay claims the district court should have granted its motion for judgment notwithstanding the verdict.

■ Bergquist claims Mackay failed to preserve error on this issue because it did not object to the jury instruction on implied warranty of fitness for a particular purpose. Generally, we may only consider on appeal those objections to instructions previously raised with the trial court. *Grefe & Sidney v. Watters*, 525 N.W.2d 821, 824 (Iowa 1994). However, the question of whether an issue should have been submitted to the jury is preserved by a motion for directed verdict. *Sandry v. John Deere Co.*, 452 N.W.2d 616, 619 (Iowa App.1989). Where the district court overrules a motion for directed verdict, a party does not waive error by agreeing to jury instructions which correctly state the law. *Holdsworth v. Nissly*, 520 N.W.2d 332, 335 (Iowa App.1994). By agreeing to the jury instructions, defendants are not agreeing there was a case for the jury. *Id.*

In the present case, defendant raised this issue by motion for directed verdict and by motion for judgment notwithstanding the verdict. We find the issue was sufficiently preserved for our review.

An implied warranty of fitness for a particular purpose is found in Iowa Code section 554.2315, and is part of the Uniform Commercial Code in Iowa. Section 554.2315 provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

■ Thus, recovery under section 554.2315 depends upon a showing that (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish suitable goods; and (3) the buyer in fact relied on the seller's skill or judgment to furnish suitable goods. *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 637 (Iowa 1988).

■ A warranty of fitness for a particular purpose is based on a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer. *Van Wyk v. Norden Laboratories, Inc.*, 345 N.W.2d 81, 83 (Iowa 1984). While a purchaser need not show he advised the seller of the particular purpose in purchasing the goods, he must nevertheless show that the seller had reason to know of that purpose. *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 111 (Iowa 1981).

■ Here, Bergquist had no communication with Mackay, and Bergquist agrees he did not advise Mackay of his particular purpose. Bergquist argues, however, that the nature of the engine alone should have alerted Mackay to the fact that it was to be used for racing purposes.

We find the nature of the engine alone would not be sufficient to alert defendant that plaintiff intended to use the engine for mud racing. Mackay testified the National Mud Racers Association rules did not permit participants to use the type of torsional damper which is the subject of this case. Thus, the parts which Mackay had been asked to balance could not be used together for racing at a sanctioned mud racing event. Further-

more, of the parts which were shipped to Mackay for balancing, only the specially weighted crankshaft could be considered a non-stock part.

We conclude plaintiff did not sufficiently show defendant was aware of his particular purpose for using the goods, and therefore, the issue of warranty of fitness for a particular purpose should not have been submitted to the jury. Because it is not clear from the verdict form on which basis the jury found Mackay at fault, the case must be reversed and remanded for a new trial.

**II.** Mackay contends there was insufficient evidence in the record to submit the issue of lost impaired earning capacity to the jury. Defendant claims Bergquist failed to show his income after the accident was less than it was before he was injured. The jury found Bergquist had past lost income of $3,100 and the present value of future lost income was $36,000.

 The right to damages for impairment of earning capacity may be otherwise classified as impairment of ability to work and earn. *Anthes v. Anthes*, 258 Iowa 260, 270, 139 N.W.2d 201, 208 (1965). It is determinable by the difference between the value of an individual's services, if working, as he would have been but for the injury, and the value of the services of an injured person, if working, in the future. *Id.*, 139 N.W.2d at 208.

Impairment of physical capacity creates an inference of lessened earning ability in the future. *Holmquist v. Volkswagen of America*, 261 N.W.2d 516, 525 (Iowa App. 1977). The basic element to be determined in the matter of claimed impairment of future earning capacity is the reduction in value of the power to earn, not the difference in earnings received before and after the injuries. *Id.* However, in determining the amount of loss, consideration must be given to evidence of wages and earnings of plaintiff prior to the injury. *Id.*

We find plaintiff presented insufficient evidence in this case to submit to the jury the issue of his future lost income. Plaintiff did not present any evidence to show what his income would have been if not for the injury, or to project his future income after the injury. We note that in the case of *Moose v. Rich*, 253 N.W.2d 565 (Iowa 1977), the plaintiff introduced evidence of the annual average wage increases of a person in his trade. *Id.* at 571. No such evidence was introduced here.

Furthermore, the evidence showed only a loss of income in the year plaintiff was injured. Plaintiff's income in subsequent years returned to the level it had been previous to the injury. We conclude this issue should not have been submitted to the jury.

Upon retrial, the trial court should be aware of the recent case of *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103 (Iowa 1995), which deals with the issue of damages under a theory of implied warranty of fitness for a particular purpose. We determine this case should be reversed and remanded for a new trial in accordance with this opinion. We do not retain jurisdiction. Costs of this appeal are assessed to plaintiff.

**REVERSED AND REMANDED.**