# IN THE COURT OF APPEALS OF IOWA

No. 18-1315
Filed December 18, 2019

**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, AS SUBROGEE OF FARMERS COOPERATIVE COMPANY,**
    Plaintiff-Appellant,

**vs.**

**PGI INTERNATIONAL; COX MANUFACTURING COMPANY d/b/a DALTON AG PRODUCTS, INC., and CNH CORP. a/k/a CNH AMERICA, LLC, a/s/o DMI, INC.,**
    Defendants-Appellees,

**and**

**SQUIBB-TAYLOR INC.,**
    Defendant.
_____

Appeal from the Iowa District Court for Boone County, William C. Ostlund, Judge.

Plaintiff appeals the district court's decision denying its motion for a new trial in an action for contribution. **AFFIRMED.**

Amie E. Penny Sayler, David M. Dahlmeier, and Mark R. Bradford of Bassford, Remele, P.A., Minneapolis, Minnesota, for appellant Nationwide Agribusiness Insurance Company, a/s/o Farmers Cooperative Company.

Henry A. Harmon and Mark W. Thomas of Grefe & Sidney, P.L.C., Des Moines, for appellee PGI International.

Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, for appellee Cox Manufacturing Company d/b/a Dalton AG Products, Inc.

Daniel A. Haws and John Paul J. Gatto of HKM, PA, St. Paul, Minnesota, and Thomas J. Cahill of Cahill Law Offices, Nevada, for appellee CNH Corp. a/k/a CNH America, LLC, a/s/o DMI, Inc.

Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Nationwide Agribusiness Insurance Company (Nationwide) appeals the district court's decision denying its motion for a new trial in an action for contribution from PGI International (PGI), Dalton Ag Products, Inc. (Dalton Ag), and CNH Corporation. We conclude (1) the district court did not abuse its discretion in determining evidence of an OSHA violation by Farmers Cooperative Company (FCC) was relevant to the issue of FCC's negligence; (2) Nationwide has not preserved error on its claims concerning other similar incidents because it did not make an offer of proof; (3) the district court did not err in granting a directed verdict to Dalton Ag on Nationwide's design defect claim; (4) the district court did not err in granting a directed verdict to PGI on Nationwide's claim of breach of an implied warranty of fitness for a particular purpose; and (5) the district court did not err by including the Shaws on the special verdict form. We affirm the decision of the district court.

I.     **Background Facts & Proceedings**

On October 29, 2011, Richard Shaw was assisting his son Michael by applying anhydrous ammonia to a field near Pilot Mound, Iowa. The anhydrous ammonia application system consisted of a tool bar, running gear, two anhydrous ammonia tanks, as well as valves and hoses. The equipment was rented from FCC. Someone, perhaps Richard, wrapped the running gear safety chain around the hose to keep the hose from dragging on the ground. As Richard made a right turn, there was no slack or give to the hose and the hose and valve were pulled apart, releasing a toxic cloud of anhydrous ammonia that engulfed the tractor that Richard was driving. Richard died as a result of the exposure to anhydrous

ammonia. Michael, in attempting to assist his father, was injured by the anhydrous ammonia.

In a previous decision in this case, we found:

In October 2011, Richard Shaw died as a result of a tragic farming accident. Richard's son, Michael, was also injured in his attempt to rescue his father. In November 2012, Farmers Cooperative Company (FCC) and its insurer, Nationwide, paid approximately $4 million to the Shaw family to settle the resulting claims. As part of that settlement, the Shaw family executed releases. In June 2013, Nationwide, as subrogee of FCC, filed suit against the Appellees, seeking contribution for the amounts paid to the Shaw family.

*Nationwide Agribusiness Ins. Co. v. PGI Int'l*, 882 N.W.2d 512, 514 (Iowa Ct. App. 2016).

As set forth above, subsequent to entering into a settlement with the Shaws, Nationwide filed an action on June 4, 2013, seeking contribution from PGI, which manufactured the excess flow valve for one of the anhydrous ammonia tanks; Dalton Ag, which manufactured the running gear; and CNH, which manufactured the tool bar.[1] Nationwide brought claims of design defect against PGI and Dalton Ag, and claims against all of the defendants for failure to warn, negligence, breach of a warranty of fitness for a particular purpose, and breach of warranty of merchantability. As an affirmative defense, the defendants claimed FCC and the Shaws were negligent.

The defendants filed motions for summary judgment, arguing that Nationwide could not seek contribution because the releases signed by the Shaw family failed to discharge the liability of the defendants, and the motion was granted

---

[1] Nationwide also sought contribution from Squibb-Taylor, Inc. and a separate settlement agreement was reached with the company. Squibb-Taylor manufactured the excess flow valve for the other anhydrous ammonia tank.

by the district court. *Nationwide*, 882 N.W.2d at 514. We previously determined the district court improperly granted summary judgment and remanded the case. *Id.* at 523. On remand, the district court determined the releases should be reformed to reflect the intent of the parties to vest Nationwide with contribution rights against third-parties, including PGI, Dalton Ag, and CNH.

Prior to the jury trial, which commenced on April 30, 2018, the district court ruled on motions in limine filed by the parties. The district court determined, "Evidence of violation of OSHA standards is admissible as evidence of negligence to *all persons* who are likely to be exposed to injury as a result of the violation."[2] The court further concluded, "Evidence of subsequent remedial measures taken by [FCC] is inadmissible." The court determined the Shaws would be included in the verdict form because they were claimants under Iowa Code section 668.2 (2013). The court determined evidence of other incidents of anhydrous ammonia leaks was not admissible. The court determined evidence of Dalton Ag's design change was not admissible.

During the trial, Nationwide's expert, Duane Wolf, a mechanical engineer, testified "under some foreseeable conditions that [the excess flow] valve will not close." He stated, "The excess flow valve is a safety feature. And it's there to prevent a release in the event of a full fracture downstream. In the event that that full fracture is achieved, the flow rate is sufficient to make that flow valve close." Wolf gave the opinion PGI failed to identify "the limitations associated with their valve" and had not done adequate testing. As to Dalton Ag, he stated, "My review

---

[2] OSHA refers to the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1), (2).

of the materials that came with the running gear provides no instruction with regard to how to hook up those two pipes."

Nationwide's other expert, Dr. Thomas Schnell, a professor at the University of Iowa, testified PGI did not produce a warning for the excess flow valve. He stated Dalton Ag did not provide any warnings related to anhydrous ammonia on the running gear. Dr. Schnell also testified CNH had "shared responsibility because they're part of the overall system to warn the user about the hazards relating to the release of anhydrous general ammonia." He asserted, "In the end, in the final product, these warnings will appear in plain sight to the end user. That didn't happen in this case."

The defendants moved for a directed verdict. The court granted a directed verdict to PGI only on the claim of breach of warranty and to Dalton Ag only on the claims of design defect and breach of warranty. On the remaining claims after hearing from twenty-one witnesses over a two-week period, the jury found PGI, Dalton Ag, and CNH were not at fault. The jury assigned fault fifty-one per cent to FCC and forty-nine percent to Richard Shaw. The jury also found the amount of the settlement was reasonable.

Nationwide filed a motion for new trial, claiming (1) the court should not have permitted evidence of OSHA violations; (2) the court should have permitted evidence of other similar incidents; (3) the court erred by granting directed verdicts to PGI and Dalton Ag; (4) the Shaws should not have been included on the special verdict form; (5) certain jury instructions were improper; (6) counsel for PGI made an inappropriate statement during closing argument; and (7) Nationwide was

prejudiced due to cumulative errors. The district court denied the motion for new trial. Nationwide now appeals.

## II. Motion in Limine

**A.** Nationwide contends it is entitled to a new trial because the district court abused its discretion by ruling evidence of OSHA violations by FCC were admissible. It claims the OSHA violation is relevant only as to FCC's relation to its employees and not to its relations to third-parties, such as the Shaws. "Normally, rulings on admissibility of evidence are reviewed for an abuse of discretion." *GE Money Bank v. Morales*, 773 N.W.2d 533, 536 (Iowa 2009).

"A ruling sustaining a motion in limine is generally not an evidentiary ruling." *Quad City Bank & Tr. v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 89 (Iowa 2011). "Rather, a ruling sustaining a motion in limine simply adds a procedural step to the introduction of allegedly objectionable evidence." *Id.* In general, "error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial." *Id.* However, "[w]hen the court's ruling on a motion in limine leaves no question that the challenged evidence will or will not be admitted at trial, counsel need not renew its objection to the evidence at trial to preserve error." *Id.* We determine the district court's ruling on the motion in limine in regard to the OSHA violation did not leave any question about the admissibility of the evidence and further objection was not necessary.

The district court relied upon *Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 270 (Iowa 1977), which provides an OSHA violation "is evidence of negligence as to all persons who are likely to be exposed to injury as a result of the violation." The court noted, "Plaintiff's decedent, though not an employee [of

defendant], was exposed to injury from the alleged violation in the instant case. Hence a violation of OSHA and IOSHA standards was evidence of negligence on the part of [the defendant]." *Koll*, 253 N.W.2d at 270. In cases that do not involve injury to an employee, "a violation of an OSHA standard is merely 'evidence of negligence as to all persons who are likely to be exposed to injury as a result of the violation.'" *Wiersgalla v. Garrett*, 486 N.W.2d 290, 293 (Iowa 1992) (quoting *Koll*, 253 N.W.2d at 270).

FCC employees are hired by farmers to apply anhydrous. The FCC employees use nurse tanks and applicators. The same equipment is rented to farmers, like Richard Shaw and Michael Shaw, who elect to apply the anhydrous. The farmers that are renting the same equipment used by the FCC employees "are likely to be exposed to injury as a result of the violation." We conclude the district court did not abuse its discretion in determining evidence of an OSHA violation by FCC was relevant to the issue of FCC's negligence.

**B.** Nationwide claims the district court abused its discretion by ruling evidence of other similar incidents involving the defendants in this case was not admissible. In ruling on the motion in limine, the court found evidence of other incidents was not admissible.[3]

Evidence of prior incidents may be admissible "to show the existence of a dangerous condition." *Lovick v. Wil-Rich*, 588 N.W.2d 688, 697 (Iowa 1999).

---

[3] Prior to trial, the court told the parties that evidence of similar circumstances concerning Svendson, Fast, and Blazek would be excluded. The court reserved ruling on Phipps. The written ruling stated the same, sustaining the defendants' motion in limine "as to the Svendson, Fast, and Blazek claims. The motion as to the Phipps case is overruled at this time." During the trial, the court ruled a similar incident concerning Phipps was also inadmissible.

Evidence of other incidents may be admissible if the "incidents occurred under substantially the same circumstances as the incident in the present case." *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 612–13 (Iowa 2000). Also, "the rule allowing evidence of similar incidents is generally limited to incidents occurring prior to the one in question." *Id.* at 615.

The Svendson, Fast, and Blazek cases occurred after the incident involving the Shaws. We conclude the district court did not abuse its discretion by ruling evidence of these incidents was not admissible. *See id.* Additionally, as to all of the incidents, defendants claim Nationwide did not preserve error because no offer of proof was made to show the whether the other incidents were sufficiently similar to be admissible. Because the district court ruled the evidence was not admissible, Nationwide had the burden to demonstrate the substance of the evidence by an offer of proof. *See Strong v. Rothamel*, 523 N.W.2d 597, 599 (Iowa Ct. App. 1994). When no offer of proof is made, "the record is not sufficient for us to address plaintiff's claimed error," and error has not been preserved. *Id.* We conclude Nationwide has not preserved error on its claims concerning other similar incidents because it did not make an offer of proof.

### III. Directed Verdict

Nationwide asserts the district court erred by granting a directed verdict to Dalton Ag on the issue of design defect and to PGI on the issue of breach of warranty of fitness for a particular purpose. It contends a directed verdict was not appropriate because it presented substantial evidence to support its claims.

We review the district court's ruling on a motion for directed verdict for the correction of errors at law. *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017).

We consider "the evidence in the light most favorable to the resisting party." *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017). "Our role on appeal is to decide 'whether the trial court correctly determined [whether] there was sufficient evidence to submit the issue to the jury.'" *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013) (citation omitted). "[I]f reasonable minds can differ as to how the issue should be resolved, a jury question is engendered," making a directed verdict inappropriate. *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013). Where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 873 (Iowa 1989).

**A.** Nationwide made claims of design defect against PGI and Dalton Ag. A product is considered to be defective in design

> when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe.

*Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006) (quoting Restatement (Third) of Torts: Prod. Liab. § 2(b) (Am. Law Inst. 1998)).

A transcript does not exist as to the court's directed verdict ruling. As such, we review the record for substantial evidence concerning this claim. "[A] plaintiff must ordinarily show the existence of a reasonable alternative design, and that this design would, at a reasonable cost, have reduced the foreseeability of harm posed by the product." *Id.* (citation omitted). To succeed on a claim of design defect against the manufacture of a product, Nationwide was obligated to provide

substantial evidence in support of each of the following elements: (1) the defendant sold or distributed the product; (2) the defendant was engaged in the business of selling or distributing the product; (3) the product was in a defective condition at the time it left defendant's control; (4) a reasonable alternative safer design could have been practically adopted at the time of the sale or distribution; (5) the alternative design would have reduced or avoided the foreseeable risks of harm posed by the product; (6) the omission of the alternative design rendered the product not reasonably safe; (7) the alternative design defect was a cause of plaintiff's damage; and (9) the amount of damage. Iowa Civil Jury Instruction 1000.2.

On this issue, Nationwide's expert, Wolf, testified:

[I]n reviewing the deposition transcript of the Dalton representatives, prior to the purchase of this running gear, they had available for sale, I believe what they call a hose stand. It might be called a pogo stick. But what it is, it's a support that could be mounted to the tongue to support the hose as it's running from the nurse tank to the toolbar. What that would do and what that does is, one, it keeps the hose from dragging on the ground. But in my opinion, that also eliminates the perception that one may feel the need to chain up the hose because you've got that pogo stick up there holding the hose up. Like I said, again that product was available. It was not offered to [FCC].

Robert Cox, the owner of Dalton Ag, testified Dalton Ag sold a hose stand that would keep the hose off the ground, and the hose stand could be considered a safety device. The cost of the hose stand was less than $100. The hose stand was not a standard item sold with the running gear manufactured by Dalton Ag, in part because Dalton Ag was concerned it would lose sales if the item was included. The hose stand was available to consumers, but Dalton Ag did not advertise it.

In considering a design defect claim, the Iowa Supreme Court stated:

> Plaintiff put on evidence that defendant knew, at the time it manufactured the husking bed, that farmers often attempted to unplug the husking rollers while they were operating. Expert testimony supported the plaintiff's contention that the defendant could have installed an emergency stop device for less than $50 and that at the time defendant designed the Unisystem such devices appeared on other machines that incorporated rollers, such as printing presses.

*Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 97 (Iowa 1994). Unlike *Hillrichs*, there is no evidence in this case that other manufacturers of running gear for anhydrous tanks used a hose stand. *See id.* at 98 ("Proof that the defendant comported with the state of the art of the time of manufacture is a defense to a design defect claim . . . ."). Wolf testified a rig he observed that was manufactured by a different company "did not come with a pogo stick." Wolf further testified that at the time of the sale, the Dalton Ag running gear design was state of the art and also admitted that he knew that the running gear went through a vending house and he had no knowledge of whether Dalton Ag offered a pogo stick as part of the sale of the running gear to the vending house.

After full review of the record, we conclude the district court did not err in granting a directed verdict to Dalton Ag on Nationwide's design defect claim.

**B.** Nationwide contends the district court erred by granting a directed verdict to PGI on the claim of breach of an implied warranty of fitness for a particular purpose. Nationwide asserts there was substantial evidence to show PGI knew the particular purpose for the excess flow valves it produced—the application of anhydrous ammonia—but the excess flow valves were not fit for this purpose, as they did not close under some foreseeable conditions.

This claim arises from Iowa Code section 554.2315, which provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 554.2316 an implied warranty that the goods shall be fit for such purpose.

In order to prevail on a claim of breach of an implied warranty of fitness for a particular purpose, a plaintiff must show (1) the defendant had reason to know of the plaintiff's particular purpose; (2) the defendant had reason to know the plaintiff was relying on the defendant's skill or judgment to furnish suitable goods; and (3) the plaintiff in fact relied on the defendant's skill or judgment to furnish suitable goods. *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W.2d 634, 637 (Iowa 1988). The Iowa Supreme Court has stated:

A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

*Id.* (quoting U.C.C. § 2-315, cmt. 2 (Am. Law Inst. & Unif. Law Comm'n 1977)).

A warranty of fitness for a particular purpose "is based on a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer." *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 84 (Iowa 1984). A case "turns on what the seller had reason to know—both as to the buyer's particular purpose and as to the buyer's reliance on the seller's skill and judgment." *Id.* at 85. "While a purchaser need not show he advised the seller of the particular purpose in purchasing the goods, he must nevertheless show that the seller had reason to know of that purpose." *Bergquist v. Mackay Engines, Inc.*, 538 N.W.2d 655, 658 (Iowa Ct. App. 1995).

In a case involving cattle vaccines, the court noted, "The plaintiffs, as owners of the cattle, and the defendant, had no direct dealing with regard to the vaccine." *Van Wyk*, 345 N.W.2d at 84–85. Because there was no evidence the seller had any "reason to know of any purpose for the plaintiffs' use of the vaccine, other than its ordinary use, or that the buyer was relying on the seller's skill and judgment in providing it," the court concluded it was improper to submit the issue of implied warranty of fitness for a particular purpose to the jury under these circumstances. *Id.* at 85–86; *see also Bergquist*, 538 N.W.2d at 659 ("We conclude plaintiff did not sufficiently show defendant was aware of his particular purpose for using the goods, and therefore, the issue of warranty of fitness for a particular purpose should not have been submitted to the jury.").

As in the directed verdict involving Dalton Ag, a transcript does not exist as to the court's directed verdict ruling against one of the counts against PGI. As such, we review the record for substantial evidence concerning this claim. There was no direct communication between FCC and PGI. FCC did not buy the excess flow valve from PGI, but rather from a third-party supplier. FCC relied entirely upon their supplier for expertise as to proper equipment for their purpose. The evidence did not show PGI had reason to know FCC's particular purpose in using the excess flow valve, which would be a "specific use by the buyer which is peculiar to the nature of his business." *See Renze Hybrids*, 418 N.W.2d at 637. PGI did not know the ultimate purchaser of the excess flow valve or the "particular purpose" the ultimate purchaser had for the valve. In addition, the evidence did not show PGI had reason to know if FCC was relying on PGI's skill and judgment in the use of the excess flow valve. *See Van Wyk*, 345 N.W.2d at 85. After full review of the

record, we conclude the district court did not err in granting a direct verdict to PGI on Nationwide's claim of breach of an implied warranty of fitness for a particular purpose.

## IV. Special Verdict Form

Nationwide claims the district court erred by including the Shaws on the special verdict form. It asserts the Shaws should not have been included in the special verdict form because they were not parties to the lawsuit. Our review of challenges to a special verdict form is for the correction of errors at law. *Beachel v. Long*, 420 N.W.2d 482, 484 (Iowa Ct. App. 1988).

Section 668.3(1)(a) states:

> Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants and persons who have been released pursuant to section 668.7, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant.

Under chapter 668, the term "party" means (1) a claimant, (2) a person named as a defendant, (3) a person who has been released pursuant to section 668.7, and (4) a third-party defendant. Iowa Code § 668.2; *Pepper v. Star Equip., Ltd.*, 484 N.W.2d 156, 160 (Iowa 1992). To the extent an entity is a "party" to a lawsuit, "it may be allocated a percentage of fault under section 668.3(2)(b)." *Pepper*, 484 N.W.2d at 160.

The Shaws entered into a release with FCC. Section 668.7 states:

> A release, covenant not to sue, or similar agreement entered into by a *claimant* and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However,

the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

(Emphasis added.) Under section 668.7, the Shaws, as entities who entered into a release, would be considered claimants.

In this case, Nationwide is asking for contribution from other alleged tortfeasors. Section 668.5 provides:

A right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. *The basis for contribution is each person's equitable share of the obligations, including the share of fault of a claimant*, as determined in accordance with section 668.3.

(Emphasis added.) *See also Caldwell v. Holiday Lake Owners' Ass'n, Inc.*, No. 12-2191, 2013 WL 3830217, at *4 (Iowa Ct. App. July 24, 2013) ("Section 668.5 sets the basis for contribution as 'each person's equitable share of the obligations, including the share of fault of a claimant, as determined in accordance with section 668.3.'"). Thus, in determining the amount of contribution, the fault of claimants should be considered.

Based on the provisions in chapter 668, we conclude the district court did not err by including the Shaws on the special verdict form.

We affirm the decision of the district court.

**AFFIRMED.**